ANNA B. GRANT (REVIVED IN NAME OF W. I. GRANT, EXECUTOR OF THE ESTATE OF ANNA B. GRANT, DECEASED), APPELLEE, v. MYRON WILLIAMS, APPELLANT.

62 N. W. 2d 532

Filed February 5, 1954. No. 33389.

*George B. Hastings,* for appellant.

*Charles M. Bosley,* for appellee.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

The purpose of this litigation is the recovery of a judgment of $1,500 and interest by appellee against appellant. The judgment in the trial court was for appellee.

There was a dam constructed on the land of appellant under the supervision of the Chase County Production Marketing Administration in conformity with the program of soil conservation authorized by Congress. The location of the dam, the plan of construction, and the details of the work were controlled and supervised by the PMA, the successor of the AAA. The landowner selected a person to do the construction work but before the contractor could execute any part of it he had to be approved by the PMA. F. D. Hayes of Wauneta had done similar work in the county as a part of the soil conservation program. He was approved for that purpose. He solicited the opportunity to construct a dam on the land of appellant and arrangements were completed about January 1, 1946, for him to do so. Thereafter appellant was not consulted about and had no part in the building of the dam.

Appellant was given to understand and he believed that the cost of the work would be provided by the government of the United States, and that it would be paid to Hayes by the local PMA office. Appellant consented to the building of the dam on this basis. The government contributed 10 cents a cubic yard for the construction of this nature for soil conservation purposes and

the landowner paid any balance that was required to fully satisfy the cost of the construction. The estimated cost of the dam .built on the land of appellant was $2,000 but the actual cost was less than was estimated but was more than $1,500. The amount allowed by the government was sufficient to satisfy the total cost of building the dam. Hayes told appellant during their negotiations, before any of the construction work was done, that he would turn in the figures on the work to the local AAA office which was then the PMA. When this was done the landowner could make application to the county office of the PMA and the matter of financing the construction work was then conducted through that office. The practice at the time the dam in question was constructed on the land of appellant was for the government not to pay the amount it allotted because of the improvement until "the next spring, a year later."

The building of the dam on the land of appellant was substantially completed about March 1, 1946. Thereafter and not later than March 18, 1946, the exact date not being shown by the record, a printed form, identified as ACP-69, furnished by the PMA office was completed by filling in the blanks appearing in it by typewriting. This was done in the local office of the PMA and the completed instrument is referred to in the record as exhibit No. 2 and will be herein referred to in the same manner or as the assignment. Hayes came to appellant and wanted him to sign the assignment so that Hayes could get his money for the work he had done on the dam. It is a fair inference that Hayes and appellant went to the PMA office and appellant there signed the assignment. The purpose of it was so that Hayes could get money to apply on the expense of building the dam before the lapse of the many months when the government would pay what it allotted to the cost of the project. Appellant understood that Hayes wanted to use the assignment to secure money and that appellee was

intending to furnish money to Hayes on the assignment but appellant did not know the amount thereof, except the statement of consideration in the assignment.

Appellee was not present when the assignment was completed or when it was signed by appellant. Appellant had no contact or communication with appellee or any one representing her concerning the assignment or any money she was intending to advance or loan or that she did advance or loan on it as security. The original assignment, after it was signed by appellant, was placed in the custody of Hayes. A duplicate of it was left in the PMA office and recorded in a book belonging to that office. Hayes took the assignment to appellee on March 18, 1946. She gave him her check for $1,500, took the assignment, and accepted and retained it as security for the money she furnished or loaned Hayes. The check was paid to Hayes and he got and retained the proceeds of it. Appellee had previously made "loans and advances" to Hayes in the same manner and on like assignments because of soil conservation work Hayes had done and because of the fact that the time had not elapsed when the contribution to be made by the government thereof would be paid. She was paid by Hayes on the former advances or loans interest at 8 percent per annum in advance. It does not appear whether or not any interest was paid her because of the $1,500 she furnished him on March 18, 1946.

The assignment contains the following: Appellant assigns for a consideration of $1,500 to Anna B. Grant, subject to the conditions stated to the extent of the consideration, all payments which may be or become due and payable to the assignor on account of his participation on his farm in the program for the current year under section 8 of the Soil Conservation and Domestic Allotment Act. The consideration expressed in the assignment was or is being advanced to the assignor in cash, supplies, or services to finance making a crop in the crop year now current. The assignment is made to

secure repayment of said sum. The Secretary of Agriculture is requested to cause said payments, or an amount equal to the consideration, to be paid to the assignee unless, prior to the time application is made to the United States for said payments, there has been filed in the office in which the assignment is filed proof that the indebtedness secured by this assignment has been repaid or otherwise discharged in which case the assignment shall be of no force and effect and any payments hereby conditionally assigned shall be made to the assignor.

Appellant was not present at the time appellee loaned Hayes $1,500 on March 18, 1946, and had no part in or knowledge of what was done at that time by appellee and Hayes. There is no proof that appellant received any part of the amount loaned to Hayes.

The claim of appellee against appellant is that he delivered the assignment to appellee; that she paid over at that time to Hayes $1,500 at the direction of appellant and accepted the assignment as security for the repayment of that amount to her; that appellant then stated to appellee the money was to be used by him for the construction of a dam on his property and to enable him to pay Hayes for his work on the dam as it was done; that appellee is the owner of the assignment and the indebtedness created by the loan made by her; that no part of the indebtedness owing to her because of the loan has been paid; and that she is entitled to a judgment against appellant for the amount of the loan with interest. This is denied by appellant. There is an absence of any proof that appellant delivered the assignment to appellee; that she furnished any money to Hayes at the direction of appellant; and that there was any communication between him and appellee in reference to the transaction between her and Hayes on March 18, 1946. The evidence in these respects is directly contrary to the allegations made by appellee.

A defense relied upon by appellant to the cause of ac-

tion alleged by appellee is the statute of limitations. The money was loaned by appellee on March 18, 1946. The record is silent as to repayment of the money loaned. If there is no agreement as to the time of repayment of money loaned, the amount thereof is in law due immediately, and the statute of limitations begins to run at once in favor of the borrower. Teasley v. Bradley, 110 Ga. 497, 35 S. E. 782, 78 Am. S. R. 113, states the rule in this language: "When money is loaned and there is no agreement as to the time of repayment, the amount loaned is in law due immediately, and the statute of limitations begins to run at once in favor of the borrower." Hodgson v. Keppel, 211 Iowa 795, 232 N. W. 725, says on this subject: "From the record, then, there being a debt due, and no time fixed for its payment, under the authorities it became due on demand, and even in the absence of a demand, the statute began to run forthwith." See, also, Jelsch v. Laurich (La. App.), 187 So. 819; Loraine Transfer Co. v. Daniel (La. App.), 11 So. 2d 244; Sturdivant v. McCorley, 83 Ark. 278, 103 S. W. 732, 11 L. R. A. N. S. 825; Uvalde Nat. Bank v. Brooks (Tex. Civ. App.), 162 S. W. 957; Howard v. Presbyterian Church, 51 Mich. 125, 16 N. W. 307; Ray v. Ray, 24 Misc. 155, 53 N. Y. S. 300; 54 C. J. S., Limitations of Actions, § 129, p. 45. It has been determined by this court that an action to enforce an indebtedness payable on demand may be commenced on the day after it was contracted. In Luikart v. Hoganson, 135 Neb. 280, 281 N. W. 27, the note on which the suit was brought was payable "on demand after date." It is said therein: "Payee in a note payable on demand after date with interest may bring an action thereon the day after the note is executed and delivered." In the opinion it is said: "It is argued that the statute of limitations did not begin to run from the date of the original note but only from the date of actual demand, since payment was to be made 'on demand after date' * * *. This position does not seem to be tenable. No

one but payee or its successor in interest could make the demand. * * * By failing to make a demand, payee in a note payable on demand cannot do away with the statute of limitations." See, also, Melville Lumber Co. v. Scott, 135 Neb. 379, 281 N. W. 803; Citizens Bank v. Taylor, 201 Iowa 499, 207 N. W. 570.

Whenever it is in the power of a person to enforce his demand his cause of action has accrued. The statute of limitations begins to run when a cause of action accrues. Luikart v. Hoganson, *supra;* Melville Lumber Co. v. Scott, *supra.*

Any cause of action alleged by appellee accrued on March 18, 1946. This case was commenced on October 20, 1950, more than 4 years after March 18, 1946. If this is an action upon an "agreement, contract or promise in writing," as appellee contends, it is not barred by the statute of limitations. § 25-205, R. R. S. 1943. If it is an action "upon a contract, not in writing, expressed or implied," as appellant contends, the statute of limitations defeats it. § 25-206, R. R. S. 1943.

This action to be upon an agreement, contract, or promise in writing must be for the recovery of money or an indebtedness promised to be paid by the assignment, the only writing relied upon by appellee in the pleading of her alleged cause of action and in the evidence produced to sustain it. If the promise, indispensable to the cause of action alleged, arises upon the proof of extrinsic facts the writing is not within the purview of the statute permitting an action to be commenced thereon within 5 years from the time when it accrued. A cause of action is not upon an instrument in writing within the meaning of the code because it is in some way remotely or indirectly connected with the instrument or because the instrument might be a link in the chain of evidence establishing the cause of action. In order for an action to be upon an instrument in writing it must in itself contain a contract or promise to do the thing for the nonperformance of which the

action is brought. A contract is unwritten if it cannot be wholly proved by a writing or writings. If there is anything that must be supplied by parol evidence to make it a binding obligation an action upon it is not one on a written instrument. In Naeve v. Shea, 128 Neb. 374, 258 N. W. 666, it is said: "An agreement partly written and partly oral may, in legal effect, be regarded in its entirety as a parol contract."

In Bracklein v. Realty Ins. Co., 95 Utah 490, 80 P. 2d 471, it is said: An "* * * action is 'founded upon an instrument in writing' if liability grows out of written instruments, not remotely or ultimately, but immediately; if it arises or is assumed or imposed from the instrument itself, or its recitals; if the instrument acknowledges or states a fact from which law implies obligation to pay or contains the contract or promise to pay or to do the thing for which action is brought. * * * A cause of action is not 'founded on a written instrument' within statute of limitations merely because indirectly connected with the instrument, or because writing may be a link in the chain of evidence establishing liability or there is a parol acceptance of a written offer."

Mills v. McGaffee (Ky. App.), 254 S. W. 2d 716, states the rule in this manner: "* * * if the contract be partly oral and partly in writing or if a written agreement is so indefinite as to necessitate a resort to parol testimony to make it complete, the * * * statute of limitations concerning 'contracts not in writing' would be applicable just as though the contract had rested entirely in parol." See, also, O'Brien v. King, 174 Cal. 769, 164 P. 631; McDonald v. Thompson, 184 U. S. 71, 22 S. Ct. 297, 46 L. Ed. 437; Martin v. Potashnick, 358 Mo. 833, 217 S. W. 2d 379; Sunset Pacific Oil Co. v. Railroad Co., 110 Cal. App. 773, 290 P. 434; Cowart v. Russell, 135 Tex. 562, 144 S. W. 2d 249; Schmulbach v. Williams, 95 W. Va. 281, 120 S. E. 600; Federal Land Bank v. Collins, 156 Miss. 893, 127 So. 570, 69 A. L. R. 1068; Simmons v. Birge Co., Inc., 52 F. Supp. 629; Annotations,

129 A. L. R. 603, 3 A. L. R. 2d 809. The assignment does not contain a promise of appellant to pay appellee $1,500 or any amount. It states no fact from which the law implies an obligation of appellant to pay any amount to appellee. The cause of action alleged by appellee is barred by the 4-year statute of limitations. § 25-206, R. R. S. 1943.

Appellee does not attempt to make the instrument dated May 14, 1946, shown by the record, any part of or material to her alleged cause of action. This appears from examination of the amended petition and the statements in the brief of appellee that this action is to recover the sum of $1,500 "founded upon an assignment, in writing, executed and delivered by the defendant (appellant) to the plaintiff (appellee)" and that the loan of money by appellee, the assignment securing its repayment, and the default in payment of the indebtedness to her "is a cause of action on the assignment by assignee against assignor for recovery of the money, founded upon an instrument in writing which is not barred by the statute of limitations until five years from the date thereof." Because of this and the effect of what has been said herein it is neither necessary nor proper to consider or determine the significance of the instrument of May 14, 1946, or of the things said or done concerning it. These are immaterial to this litigation.

The manner of considering an action at law brought to this court by an appeal has often been stated substantially as contended by appellee. It is not the province of this court in reviewing the record in an action at law to resolve conflicts or to weigh evidence. If there is a conflict in the evidence produced in the action this court in reviewing the judgment rendered will presume that controverted facts were decided by the jury in favor of the successful party and the finding of the jury on conflicting evidence will not be disturbed unless clearly wrong. Bolio v. Scholting, 152 Neb. 588, 41 N. W. 2d 913; James v. Hogan, 154 Neb. 306, 47 N.

W. 2d 847. A like presumption will be accorded the findings if an action has been tried, as this case was, by the court without a jury. Sorter v. Citizens Fund Mutual Fire Ins. Co., 151 Neb. 686, 39 N. W. 2d 276; Garbark v. Newman, 155 Neb. 188, 51 N. W. 2d 315. In this case the evidence is not conflicting in respect to any matter material to the issue presented. The finding that appellant is indebted to appellee because of the allegations of appellee is contrary to the evidence and is clearly wrong. The judgment is contrary to law.

The judgment should be and it is reversed and the cause is remanded with directions to the district court for Chase County to dismiss the action.

REVERSED AND REMANDED WITH DIRECTIONS.

MESSMORE, J., participating on briefs.