E. Earl Bailey, Special Administrator of the Estate of Nola Bailey, deceased, appellee, v. Merle C. Karnopp, Sheriff of Lancaster County, Nebraska, appellee, Robert Metcalf, Special Administrator of the Estate of Thomas M. Bentley, deceased, intervener-appellant.

Zilah M. Powell et al., appellees, v. Goldia A. Bentley et al., appellants.

104 N. W. 2d 417.

Filed July 22, 1960. No. 34751.

*Barney, Carter & Buchholz* and *Chauncey E. Barney,* for appellants.

*Max Kier,* for appellees.

Heard before MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

There are two cases involved in this appeal. The first is a replevin action brought by E. Earl Bailey, special administrator of the estate of Nola Bailey, deceased, against Merle C. Karnopp, sheriff of Lancaster County, involving certain personal property taken into possession by said sheriff. Robert Metcalf, special administrator of the estate of Thomas M. Bentley, deceased, intervened in the replevin action. The sheriff filed a disclaimer of any right or interest in the property involved in the replevin action at the time of trial of such action. The second case is an action in equity brought by Zilah M. Powell and E. Earl Bailey as plaintiffs, against Goldia Bentley, a widow, Lulu Blue and Terry E. Blue, wife and husband, Lucille Yeany and Fred W. Yeany, wife and husband, Louise Busefink and Herbert Busefink, wife and husband, and Lucy Madden and John Madden, wife and husband, to quiet title to certain real and personal property known as the Lone Oak cafe, alleged to have been owned by Nola Bailey at the time of her death.

By stipulation of the parties, the two actions were consolidated for trial and appeal. A jury was waived in the replevin action and the trial had to the court.

In the replevin action the court found that the property described in the plaintiff's petition was the property of Nola Bailey, deceased, at the time of her death; that the right of possession of said personal property when this action was commenced was in the plaintiff and assessed the plaintiff's damages in the amount of one cent; and rendered judgment in accordance with the findings.

In the action to quiet title, the court found generally in favor of the plaintiffs and against the defendants; that the allegations of the plaintiffs' petition were true; that the plaintiffs were the owners in fee simple of Lot 27, Irregular Tracts in Section 26, Township 10 North, Range 5 East of the 6th P.M., in Lancaster County; that the plaintiffs were the sole and only heirs of Nola Bailey, deceased; that Nola Bailey was the owner in fee simple of the premises above described at the time of her death; and that Nola Bailey died intestate and the title to the real estate vested in the plaintiffs in equal shares. The court further found that Goldia Bentley was a widow, and the defendants Lulu Blue, Lucille Yeany, Louise Busefink, and Lucy Madden were her daughters; that Goldia Bentley was the widow of Theodore M. Bentley, deceased, and the above-named defendants were his daughters; and that said defendants had asserted a claim and interest in the real estate above described and that said claims were groundless and without color or merit. The judgment makes reference to the other defendants who are the husbands of the daughters and who have no interest in the title to this real estate. The court further found that the plaintiffs and their predecessor in title had been in open, notorious, exclusive, continuous, and adverse possession of said real estate for more than 10 years immediately prior to the commencement of this action and during all of said time asserted title to said premises against all persons whatsoever, including Theodore M. Bentley, deceased; and that Theodore M. Bentley, deceased, had disclaimed all right, title, and

interest in said premises by virtue of an affidavit duly filed in the office of the register of deeds in Lancaster County. The court further found that the depositions of Henry A. Van Aelst and Leona M. Van Aelst were taken by the defendants during the trial of this action and subsequently offered in evidence and found the same to be inadmissible, but that the court had reviewed the testimony tendered therein and found that even if said depositions were to be received in evidence, the court's finding generally in favor of the plaintiffs and against the defendants would still prevail. The court rendered judgment in accordance with the findings.

The defendants moved the court to vacate its decision and grant the defendants a new trial. The court overruled the defendants' motion for new trial and the defendants perfected appeal to this court.

The petition in replevin alleged that Nola Bailey, deceased, at the time of her death was the owner and in possession of certain personal effects described in the petition, which were taken into possession by the sheriff. The plaintiff prayed for return of the goods and chattels or for the value of the same.

The petition in intervention in the replevin action alleged that Theodore M. Bentley, deceased, was a resident of Lancaster County at the time of his death; and that the petitioner, as special administrator of the estate of Theodore M. Bentley, was entitled to and required to take into possession all of the personal property belonging to and owned by Theodore M. Bentley at the time of his death. The petition in intervention then described the property the same as appears in the plaintiff's petition in replevin. The petition further alleged that E. Earl Bailey and the sheriff wrongfully detained and kept said personal property from the petitioner in intervention. The prayer was for judgment against the plaintiff, E. Earl Bailey, and Merle C. Karnopp, sheriff, for the return and delivery of said property as described in the petition in intervention, and for costs.

At this point it is noted that throughout the record Theodore Milton Bentley is referred to as Thomas Bentley, T. M. Bentley, or Tom Bentley. We will refer to Theodore Milton Bentley as Tom Bentley or, as occasion requires, by his other names, and to the other parties as they are designated in the district court or on occasions by their names as the same may be required.

In the suit to quiet title, the petition of the plaintiffs Zilah M. Powell and E. Earl Bailey against the defendants above set forth, alleged that the plaintiffs were the owners in fee of Lot 27, Irregular Tracts in Section 26, Township 10 North, Range 5 East of the 6th P. M., in Lancaster County; that the plaintiffs were the sole and only heirs at law of Nola Bailey, deceased, being the daughter and son of the said deceased; that Nola Bailey was the owner in fee of said premises, and died on August 27, 1958, intestate; and that the title to said real estate thereupon vested in the plaintiffs, an undivided half interest therein to each of the plaintiffs. The petition then identified the defendants and their relationship to Tom Bentley, deceased, and stated that said defendants asserted and claimed an interest in the real estate herein described, which claims were false and without color or merit. It was further alleged that Nola Bailey was seized in fee of said premises by virtue of a deed of record; that Tom Bentley, deceased, in his lifetime, by affidavit duly filed of record, stated that he had no interest in said premises; that none of the defendants had any right, title, or interest in said real estate; and that by virtue of the facts above set forth there was a cloud cast upon the title of the plaintiffs to the real estate and the plaintiffs' use thereof. The prayer of the petition was that title be quieted and confirmed in the plaintiffs as against each of said defendants; and that defendants be enjoined forever from asserting any claim of interest in said real estate or in any portion thereof.

The defendants, by answer, denied each and every

allegation contained in the plaintiffs' petition; and alleged that the true owners of the real estate described in such petition were the sole and surviving heirs of Tom Bentley.

The defendants filed an amended answer and cross-petition. The amended answer denied each and every allegation of the plaintiffs' petition. The cross-petition alleged that from 1939 and until the time of his death, the true, beneficial, and equitable ownership of the real estate described in the plaintiffs' petition was at all times vested in Tom Bentley, deceased; that Nola Bailey's interest was a bare legal title; that Tom Bentley died intestate on August 27, 1958; that thereupon ownership of said real estate vested in the manner provided by law in his sole and surviving heirs, naming them; that until his death, Tom Bentley operated upon the premises here involved a business known as the Lone Oak cafe and owned all of the fixtures, equipment, and personal property used in the operation of said business; and that upon his death such property also descended to his heirs at law, but the plaintiffs wrongfully had possession of the same. The prayer was that the legal and equitable title to the real estate be quieted in the heirs of Tom Bentley, and that the title to the personal property be likewise quieted in them.

The plaintiffs replied to the amended answer, denying each and every allegation therein contained not admitted by the plaintiffs' petition. In answer to the defendants' cross-petition the plaintiffs denied all of the allegations therein contained except such as admitted the allegations of the plaintiffs' petition. Further answering defendants' cross-petition, the plaintiffs alleged that they and their immediate predecessor in title, to wit, their mother, Nola Bailey, deceased, had been in open, exclusive, and adverse possession of the premises described in the plaintiffs' petition for more than 10 years prior to the commencement of this action and that they and their immediate predecessor in title had been

seized of legal title to the said premises for more than 10 years; and specifically denied that Tom Bentley had any interest, legal or equitable, in said premises during the 10-year period prior to the commencement of this action. The plaintiffs further alleged that their predecessor in title, Nola Bailey, deceased, acquired legal title to said premises on June 4, 1945; that she was in possession thereof until the date of her death; and that the plaintiffs had been in possession thereof subsequent to her death. The plaintiffs specifically denied that Tom Bentley had any interest in said premises at the time of his death. The plaintiffs affirmatively alleged that Tom Bentley disclaimed any interest in the premises in an affidavit recorded April 14, 1952, in which he stated that he claimed no right, title, or interest in and to said premises heretofore mentioned, or the buildings and improvements thereon. The plaintiffs further alleged that defendants were charged with notice of said affidavit, the same being a matter of record since April 14, 1952, and said defendants were estopped to deny the truth of the affidavit. The plaintiffs further alleged that Nola Bailey, subsequent to the year 1945, dealt with said property as her sole and exclusive property, paid the taxes thereon, operated a business thereon, employed help, including Tom Bentley, paid wages and social security for and in behalf of said help, including Tom Bentley, paid real estate taxes, and filed income tax returns; that as her successors in interest, plaintiffs were vested with the title to the real estate, together with all improvements thereon; and that defendants had no interest therein. The plaintiffs' prayer was the same as in their petition.

The defendants and intervener set forth a great number of assignments of error in both actions which may be summarized as follows: The decision of the trial court was contrary to the evidence and the law; the trial court erred in failing to grant the defendants and intervener a continuance to prepare for trial; the trial

court erred in receiving in evidence certain exhibits; the trial court erred in not receiving certain evidence offered by the defendants and intervener; the trial court erred in failing to declare the existence of a resulting trust in favor of Tom Bentley, deceased; the trial court erred in failing to impose a constructive trust upon a part of the real estate involved; and the trial court erred in finding that the plaintiffs and their predecessors in title were in open, notorious, exclusive, continuous, and adverse possession of said real estate for the statutory period of time.

These cases as consolidated were set for trial on December 17, 1958, and continued to December 29, 1958. Prior to December 17, 1958, the defendants and intervener were represented by counsel who, due to a disagreement with them, withdrew from the case. Their present counsel entered his appearance in behalf of the defendants and intervener on December 17, 1958, and filed a written motion for a continuance. Proceedings were resumed on December 30, 1958.

The substance of the allegations of the defendants' motion for continuance may be summarized as follows. The defendants alleged that their present counsel was employed by them on December 15, 1958, by a long distance telephone call from Cleveland, Ohio; that he was informed that the case was set for trial on December 17, 1958; that present counsel for defendants had no previous acquaintance with the case and informed defendants that he was engaged as a hearing officer before whom depositions were being taken in an election contest which had been noted for hearing on November 24, 1958, and might continue until December 29, 1958; that counsel was urged by the defendants to take such employment, and he accepted; and that because of the shortness of time counsel would not be able to present a proper defense on behalf of the defendants and requested a continuance of 45 days.

To the defendants' motion for continuance, the plain-

tiffs filed objections which may be summarized as follows: That the case was originally set for trial by agreement of the parties on November 24, 1958, and a continuance was obtained until December 17, 1958; that the case had been fully investigated by a former agent of the Federal Bureau of Investigation for the defendants; that there was a substantial amount of property involved in this case; that the attempt on the part of the defendants' counsel to obtain a further continuance would cause other parties to lose substantial amounts of money; and that defendants' prior counsel were furnished certain documents pertaining to the ownership in the property involved in this litigation. Plaintiffs asked that a continuance be denied.

In addition, defendants' counsel testified with reference to why the defendants should be granted a continuance; that he learned on December 28, 1958, of certain material and competent evidence that could be given by nonresidents of the state which should be taken and presented in the trial; that the courthouse in Lancaster County was closed from December 24 until December 29, 1958, and he was unable to obtain admittance; and that there were several public records under the possession and control of certain county officials pertaining to this case.

On cross-examination counsel for defendants testified that he received a telephone call from one Wendell Sweet from Columbus, Ohio; and that he had previously talked to another person in Lincoln who stated that Sweet was a former Federal Bureau of Investigation agent and had asked this person about procuring counsel to represent the defendants. This witness further testified as to his engagement as a hearing officer in the election contest and the length of time he was required to perform such duties, and he so informed Mr. Sweet over the telephone. He further testified that he knew the case was set for trial on December 17, 1958; and that he knew defendants' former counsel had in-

vestigated the case, that Mr. Sweet had been in Nebraska many days investigating the case, and that he would receive the results of such investigation.

The trial court denied defendants' motion for continuance.

It appears from the record that this case was tried on various dates, beginning on December 17, 1958, and continuing on December 29 and 30, 1958, January 7, 8, 9, 21, 22, and 23, 1959.

"A motion for the continuance of a cause, regularly reached for trial, is addressed to the sound discretion of the trial court. Unless abuse of such discretion is shown, ruling on the motion will not be disturbed." Freeman v. City of Neligh, 155 Neb. 651, 53 N. W. 2d 67. See, also, Vasa v. Vasa, 165 Neb. 69, 84 N. W. 2d 185.

In the absence of an abuse of discretion, a denial of a continuance does not constitute error. We conclude that the trial court did not abuse its sound legal discretion in denying the defendants a continuance.

With reference to the replevin action, we have heretofore set forth the judgment of the trial court respecting such action.

The record shows that Nola Bailey and Tom Bentley died by accidental asphyxiation in the early morning of August 27, 1958. The place of their deaths was in a cottage which they maintained as their household. The cottage was located on the same grounds as the Lone Oak cafe, west of Lincoln, on the highway just east of Emerald. A deputy sheriff, assisted by other officers and the county attorney, made an investigation at the time of the deaths. The property found in the cottage was taken into possession by the sheriff of Lancaster County and part of it, consisting of $1,116.59 in cash, a billfold, watch, and ring of keys was given to the special administrator of the estate of Tom Bentley. It is admitted by the parties that this special administrator is now the administrator of the estate of Tom Bentley, deceased. All of the personal property, except that

above described which was given to the personal representative of the deceased Tom Bentley, was turned over to E. Earl Bailey, the special administrator of the estate of Nola Bailey, deceased, who is now the administrator of such estate.

The property so taken was listed in three categories. One list was Nola Bailey's personal effects, and included $5,709.48 in cash, a safe deposit box key, diamond rings, and other items. Another list was property taken from a safe in the cottage, and included $79 in cash, an abstract and papers pertaining to the Lone Oak cafe, and several bundles of insurance policies. All of the articles turned over to Tom Bentley's personal representative came from his room in the cottage. The articles turned over to the personal representative of Nola Bailey, deceased, were taken from a locked safe in Tom Bentley's room and from various places in her room. All of the property taken by the sheriff and placed in his custody came from the cottage.

In Lewis v. Hiskey, 166 Neb. 402, 89 N. W. 2d 132, we held that: "The findings of a court in a law action in which a jury is waived have the effect of a verdict of a jury and will not be disturbed on appeal unless clearly wrong.

"In such a case, it is not within the province of this court to resolve conflicts or to weigh evidence. If there is a conflict in the evidence this court in reviewing the judgment rendered will presume that controverted facts were decided by the trial court in favor of the successful party and the findings will not be disturbed unless clearly wrong." See, also, Grant v. Williams, 158 Neb. 107, 62 N. W. 2d 532; Plummer v. Fie, 167 Neb. 367, 93 N. W. 2d 26.

Further, in considering the sufficiency of the evidence to sustain a verdict or judgment rendered by a court in a case where a jury is waived, the evidence must be considered most favorably to the successful party, any controverted fact resolved in his favor, and

he must have the benefit of every inference reasonably deducible from the evidence. See, Granger v. Byrne, 160 Neb. 10, 69 N. W. 2d 293; Reynolds v. Knott, 164 Neb. 365, 82 N. W. 2d 568; Brown v. Globe Laboratories, Inc., 165 Neb. 138, 84 N. W. 2d 151.

From a review of the evidence pertaining to the re-plevin action, and in the light of the above authorities, we conclude that the judgment of the trial court rendered in the replevin action was proper.

This brings us to the action to quiet title which is triable de novo in this court.

Inez Shepard, a member of a firm of accountants, testified that she knew Nola Bailey during her lifetime, and also knew Tom Bentley. She produced certain records and federal income tax returns which showed partnership returns for the Lone Oak cafe business, made by Nola Bailey and Tom Bentley as partners for the years 1941, 1942, 1943, 1944, and 1945. In 1946 there was a difference in the income tax returns because two separate income tax returns were filed, Tom Bentley's income tax return referred to the operation of the Lone Oak cafe, and Nola Bailey's return reported the building and equipment, with the rent earned and the expense involved in its operation. In 1947, 1948, and at least a part of 1949, the same form of reporting income tax was made. On October 1, 1949, her firm was informed that the business of the Lone Oak cafe was sold to Nola Bailey. This required the issuance of a new social security number for Nola Bailey to be used from then on, and the Lone Oak cafe was operated as her business. After October 1, 1949, the Lone Oak cafe business was reported on income tax returns as a separate proprietorship in Nola Bailey. In 1950, Nola Bailey's income tax return was an individual return showing that she operated the business of the Lone Oak cafe as the sole proprietor. There was no record of an income tax return made by Tom Bentley in 1950. In 1951, the income tax return of Nola Bailey reported that she was the sole

proprietor of the Lone Oak cafe. The same type of income tax return was made by Nola Bailey in 1952, 1953, 1954, 1955, 1956, and 1957. All of such returns showed that she was the sole proprietor of the Lone Oak cafe. Tom Bentley reported wages that he received for working at the Lone Oak cafe, and the same years his wages were reported as an expense in Nola Bailey's income tax return. Tom Bentley was listed in the social security reports as an employee of Nola Bailey in returns made in 1953, 1954, 1955, 1956, and 1957. This witness further testified to an individual income tax return of Tom Bentley in 1954, wherein he gave his occupation as a cook at the Lone Oak cafe, and his total wages in the amount of $5,100. A deduction for his wages was reported in Nola Bailey's income tax return. An individual income tax return of Tom Bentley for 1955 shows the same source of income from his work at the cafe and the amount of gross wages received. A deduction for the same year was shown on the income tax return of Nola Bailey for the same year. In 1957, Tom Bentley made an income tax return showing his income from the Lone Oak cafe as an employee, and as such he received a salary and wages. This witness also testified to quarterly federal tax returns which were filed to report the deductions from employees' wages for social security and withholding tax. These quarterly returns began for the quarters ending September 30, 1953, through September 30, 1958. These returns showed the names and social security numbers of the employees of Nola Bailey doing business as the Lone Oak cafe during that period of time. In each instance the returns showed Tom Bentley's name and social security number and the amount of his wages. This witness also identified an employee's wage record sheet for Tom Bentley.

On cross-examination this witness testified that she was not sure how the information came to her attention in earlier years with reference to the matters handled by the firm for Nola Bailey and Tom Bentley.

However, in the latter years Nola Bailey would bring in her journal in which she had recorded cash disbursements and the record of her daily receipts, which account would be analyzed by the accounting firm and from which the quarterly statements were prepared. That was during the last 7 or 8 years. These records of Nola Bailey were in her own handwriting.

A clerk in the office of the county treasurer whose duties were to make out tax receipts, testified that he checked the records with respect to Lot 27 (the property described in the plaintiffs' petition) for the purpose of determining payment of taxes for the years from 1945 to date, and that all receipts for taxes were made to Nola Bailey.

There appears in the record an affidavit as follows: "State of Nebraska County of Lancaster SS: T. M. Bentley, being first duly sworn, upon his oath deposes and says: That he claims no right, title or interest in and to Lot 27 (formerly part of Lot 21), Irregular Tracts in the Northeast Quarter of Section 26, Township 10 North, Range 5, East of the Sixth P.M., Lancaster County, Nebraska, or the building and improvements thereon, and that the same is owned by Nola Bailey. (Signed) T. M. Bentley Subscribed and sworn to before me this 11 day of April, 1952. (Signed) Dale L. Young Notary Public Commission expires December 20, 1957."

There also appears of record a bill of sale dated October 3, 1949, from Tom Bentley to Nola Bailey, conveying his entire interest in the business of the Lone Oak cafe.

There appears in evidence what is entitled "Complete Release," signed by Goldia May Bentley before a notary public in Trumbull County, Ohio, dated December 1, 1955, which is in part as follows: "This agreement entered into this — day of July, 1955 by and between Thadore (sic) Milton Bentley of Lincoln Lancaster County Nebraska and Goldia May Bentley ne (sic) Scarberry, husband and wife of Girard Ohio, WHERE-

AS the parties have not lived together as Husband and wife for several years and it is their opinion they will not at any furture (sic) time, and are desirious (sic) of releasing each other of any or/and of all claims rights or title to any or all of their inheritances, holdings either in their personal or Real Property, and also of any claim or demand that either might have upon the other past present or future now and forwever (sic) Witness our hand and seal this day and year first above written." This was signed by Goldia May Bentley, but not by Tom Bentley.

The deputy clerk of the United States District Court testified to a complaint in the case of Nola Bailey, plaintiff, against George W. O'Malley, Collector of Internal Revenue for the District of Nebraska, defendant. It shows that the plaintiff in that action asserted title to the Lone Oak property. This action was filed on July 10, 1951. This matter was dismissed with prejudice, pursuant to a stipulation, each party to pay his own costs.

The county assessor of Lancaster County brought in records which comprised personal tax returns for the years 1950 through 1958, showing that Nola Bailey was the owner of the Lone Oak cafe.

The accountant was recalled and testified to an employee's wage record sheet pertaining to Tom Bentley for the year 1958. This document in Nola Bailey's handwriting was delivered by her to the accountant. This was a record of the wages paid and the withholding and social security deducted, from which the quarterly reports were made by the accountants. She testified that it was the same type of record Nola Bailey furnished relating to the same matters as previously testified to by her.

The county clerk of Lancaster County identified certain exhibits including an application made by Tom Bentley for a roadhouse or dancehall license for the Lone Oak cafe in 1957, and the same type of application made by Tom Bentley in 1958. These licenses were

issued to and paid for by Tom Bentley.

Earl Bailey testified that he was cashier of the Commercial Bank at Stratton, Nebraska; that Nola Bailey was his mother, and the mother of his sister Zilah Powell; and that his mother and father were divorced. He further testified that he had been acquainted with Tom Bentley for several years and knew him as head chef at the Lone Oak cafe; that the Lone Oak cafe was in his mother's name, that is, the restaurant business and the title to the personal property were in her name; and that he was familiar with the signature of Tom Bentley and would be able to identify his signature. This witness was handed an exhibit and identified the signature thereon as that of Tom Bentley. This document read as follows: "October 3, 1949. For and in consideration of ($1.00) one dollar and the complete cancellation of a debt contracted between myself as debtor, and Nola Bailey as creditor, I hereby sell and convey to her my entire ownership and claim of and on the business of the Lone Oak, operating as a restaurant and located 5½ miles west of Lincoln, Nebraska, on U. S. Hwy. #6;—Excepting:— That the Nebraska State Copyright of the name 'Lone Oak', which is registered in my name, shall remain my exclusive property. T. M. Bentley. Witness. Fayette C. Vergith."

This witness identified certain exhibits which were licenses for the sale of cigars, tobacco, and cigarettes, issued to Nola Bailey. In addition, this witness identified certain exhibits which were certificates of registration issued by the Director of the Department of Agriculture and Inspection of the State of Nebraska to Nola Bailey, granting her the right to operate a restaurant. This witness also identified a certain exhibit which was a list of insurance policies showing Nola Bailey as the insured. This witness also identified an exhibit which was the trademark registration of "Lone Oak," registered in the names of Nola Bailey and Tom Bentley. This witness further testified that he had visited the

Lone Oak many times, in 1946 and prior thereto, and there had not been a dancehall in the Lone Oak cafe since 1946 or 1947.

On cross-examination this witness testified that he had known Tom Bentley since around 1933, when Bentley was head chef at the Lone Oak cafe and his mother was cashier, directed the services in the dining room, and acted as hostess; that the Lone Oak was first operated in Emerald for 3 or 4 years, and in 1938 operated at its present location; that in 1944, it burned down and was rebuilt; and that he sold the real estate here involved and the personal property in the restaurant, and was required to furnish merchantable title under the terms of the contract.

The record of claims in the estate of Nola Bailey, deceased, and Tom Bentley, deceased, were offered and received in evidence to show the claims of the Lone Oak cafe against the respective estates. This record shows that the claims relating to the business of the Lone Oak cafe were filed in the Nola Bailey estate.

The evidence adduced by the defendants may be summarized as follows.

The register of deeds of Lancaster County identified an exhibit which is a contract of sale between Chester M. Fancher, a married man, and Inez Fancher, a single woman, made May 21, 1936, with Theo M. Bentley, and filed of record September 28, 1936. This witness further identified a mortgage from Nola Bailey to the J. H. Yost Lumber Company, dated July 2, 1945, signed by Nola Bailey and Tom Bentley, and a warranty deed from Henry A. Van Aelst and Leona M. Van Aelst, husband and wife, to W. J. Powell and Zilah N. Powell, sworn to before a notary public on June 24, 1941.

An employee in the office of the county treasurer testified that the records show the payment of real estate taxes on the Lone Oak property were receipted to Tom Bentley for the years 1936, 1937, and 1938; for the years 1939 through 1942, to Leona and Henry Van

Aelst; and for the years 1943 and 1944, to Tom Bentley.

The county assessor identified certain personal property assessments of the parties for the years of 1936 through 1949. These business property assessments show the schedules were made in behalf of Tom Bentley from 1936 through 1945. Beginning in 1946, the business property schedule was returned by Nola Bailey, and signed by Nola Bailey. From 1947 on, the business schedule returns were made by Nola Bailey. In 1954, the valuation of the Lone Oak real property was raised by reason of a general revaluation of Lancaster County real estate. Nola Bailey and Tom Bentley went together and complained about the taxes, objecting to the valuation placed on the Lone Oak property.

A witness who worked at the Lone Oak cafe testified that when she went to work, either the end of September or the first of October 1956, she was given instructions by Nola Bailey with reference to her work in the dining room, and was told that if anything was needed from the kitchen she should consult Tom Bentley. She also testified that Nola Bailey, Tom Bentley, and the help took their meals family style, and on one occasion in June or July 1958, one of the new waitresses called Tom Bentley Nola's husband. Nola said she "didn't have such a thing"; and that it was "much better to have a partner" and you could "buy him out or kick him out." There was a division of work between Tom Bentley and Nola Bailey, the latter had charge of the dining room and greeting the customers while the former had charge of the kitchen, and he also directed the waitresses in the dining room, decided when the place should close; took the waitresses home after their work; and paid for the gasoline out of his own pocket. When Nola Bailey made change, she used the cash drawer and the cash in her pocketbook interchangeably. This witness further testified that she observed Tom Bentley taking money from the cash drawer in May or June 1958, and loaning it to a person in Nola's presence; and that during the time

she worked at the Lone Oak, from 1956 to August 1958, Tom Bentley was present. He did no cooking in the kitchen, but usually sat in a booth or at a desk.

On cross-examination this witness testified that Nola Bailey gave her the slips for social security and withholding tax; that she was hired by Nola Bailey, worked for her, and was paid by her; and that she had a claim for wages which she filed in the Nola Bailey estate.

An employee of the Lone Oak cafe for 21 years testified that when she first went to work at the Lone Oak cafe in 1936 or 1937, Tom Bentley always took care of the kitchen and Nola Bailey the dining room; that after the place burned down in 1944, Nola Bailey told this witness "we" were building it; that when she returned to work in 1946, the division of work between Nola Bailey and Tom Bentley remained the same as when she first went to work; that she worked up until the time of the deaths of Nola Bailey and Tom Bentley; that while she worked at the Lone Oak, Nola Bailey made a special salad dressing which was sold at retail in the restaurant; and that the money received from these sales was kept separate because Nola Bailey said: "This is my money." On cross-examination this witness testified that she was always paid her wages in cash, by Nola Bailey, from the time she went to work at the Lone Oak until the time of the deaths of Nola Bailey and Tom Bentley; that Tom Bentley did not pay the waitresses, but on occasions when extra help was needed in the kitchen he paid such help; that after October 1949, Tom Bentley's name did not appear on anything insofar as her employment was concerned; and that she filed a claim for wages in the Nola Bailey estate.

Lucille Yeany, one of the defendants and cross-petitioners, testified that she lived in Cleveland, Ohio; that in 1930, the family of Tom Bentley lived in Girard, Ohio; that her father, Tom Bentley, was a traveling representative of a firm selling road machinery; and that he lived with the family until Decoration Day in

1933, when he left and came to Lincoln. She next saw her father in September 1939, when she brought her mother with her to endeavor to get funds from her father. Her father always corresponded with her up until the time of his death. She came on a visit to her father in the fall of 1942, in 1947, and with her husband and two sons in July and August 1955. They stayed in the cottage with her father and Nola Bailey for nearly 2 weeks. One night in a general family conversation, Nola Bailey told them how Tom Bentley had built the place, and how they both had worked to make it a success. Nola Bailey further said that she and the father of this witness had it fixed so that if anything would happen to her father, there would be funds available to buy out his heirs, and the same would be true if anything happened to Nola Bailey. This witness further testified that she and her two sisters and a nephew came to Lincoln August 28, 1958, after hearing of the deaths of their father and Nola Bailey; that they stayed in the cottage on the Lone Oak premises until September 5, 1958; and that Earl Bailey and his brother-in-law, Bill Powell, were staying in the cottage when they arrived. During the time they were there, this witness took her father's personal effects, which consisted of an assignment, a contract for the sale of the Lone Oak real estate from Leona M. Van Aelst to Theodore M. Bentley, receipts for payments by her father to Searle & Chapin Lumber Company, receipts showing payment of county taxes on the real estate for the years of 1936 through 1944, and a contract for the purchase of the Lone Oak property from the Fanchers, signed by Tom Bentley.

The secretary and treasurer of the Nebraska Central Building and Loan Association testified that his company made a loan of $10,000 on the Lone Oak property, secured by a mortgage dated June 6, 1945. He identified the loan application signed by Tom Bentley and Nola Bailey. He testified that according to the company check record the loan proceeds were distributed as fol-

lows: $3,000 to Nola Bailey on June 14, 1945; $4,000 to W. J. Powell on June 15, 1945; $1,500 to Tom Bentley on June 15, 1945; $1,031.34 to Van Sickle Glass & Paint Company; and the balance to insurance, abstracting, etc. The cleared check for $4,000 showed the endorsement of W. J. Powell. The application for the stock made in connection with the loan was made by Nola Bailey and signed by Tom Bentley and Nola Bailey. On cross-examination this witness testified that Nola Bailey was the "borrowing member" of the association to whom the loan of $10,000 was made. This loan was paid in 1947, and the abstract was delivered to the First National Bank.

In rebuttal, the president of the First National Bank identified certain entries made in the abstract relating to the Lone Oak real estate, including a mortgage of $13,000 showing a loan made to Nola Bailey; a mortgage for $9,500 secured by the Lone Oak property, the loan being made to Nola Bailey; a mortgage for $8,000 involving a loan made to Nola Bailey; and an entry on the abstract showing an affidavit of Tom Bentley, sworn to before a notary public on April 11, 1952, wherein he disclaimed any interest in the mortgaged real estate.

It appears from the record that one Chet M. Fancher, a married man, and Inez Fancher, a single woman, entered into a contract for the sale of real estate which included Lot 27, the Lone Oak property, to Theo M. Bentley, which was filed of record September 28, 1936, and that Lorene Fancher, wife of Chester M. Fancher, conveyed by quitclaim deed to Theo M. Bentley, the deed being dated September 21, 1936, and filed of record September 28, 1936, describing certain real estate including Lot 27, being the Lone Oak property. It also appears that Inez Fancher obtained a decree of divorce from Chester Fancher, the custody of their minor children and allowance for support money, attorney's fees, and costs, on December 11, 1933. An execution was issued on the real estate which included Lot 27, and

the property was sold to Henry A. Van Aelst and Leona M. Van Aelst, husband and wife as joint tenants with full rights of survivorship, which sale was confirmed and deed ordered. In conformity with this order, the sheriff of Lancaster County executed a deed to the Van Aelsts, dated May 20, 1940, and filed of record May 25, 1940.

It also appears from the record that there was an action to quiet title brought by the Van Aelsts, which included Lot 27, the Lone Oak property, and title was quieted in the Van Aelsts. Thereafter Henry A. Van Aelst and Leona M. Van Aelst executed a warranty deed to W. J. Powell and Zilah N. Powell involving real estate including Lot 27, the Lone Oak property. This deed was dated June 24, 1941, and filed of record April 25, 1945.

On June 4, 1945, W. J. Powell and Zilah N. Powell executed a quitclaim deed to Nola Bailey which conveyed to her the Lone Oak property. This deed was filed of record June 15, 1945.

A question arose during the progress of the trial with reference to the admissibility in evidence of the depositions of Henry A. Van Aelst and Leona M. Van Aelst. It appears that the trial court considered the evidence contained in these depositions. We have likewise examined the evidence contained therein and considered the same in this appeal. We will not set out this evidence because it would unnecessarily lengthen this opinion, and in any event it would not be sufficient to upset the findings and judgment of the trial court.

The defendants contend that there is either a resulting or a constructive trust established by the evidence in this case. We do not question the authorities cited by the defendants defining a resulting or constructive trust, nor the applicability of the authorities cited by the defendants relating to resulting or constructive trusts under the facts as shown in such authorities.

In Olsen v. Best, 167 Neb. 198, 92 N. W. 2d 531, this

court held: "To establish a resulting trust the evidence must be clear, satisfactory, and convincing * * *."

The burden of proof is upon one seeking to establish the existence of a constructive trust to do so by evidence which is clear, satisfactory, and convincing in character. See Musil v. Beranek, 160 Neb. 269, 69 N. W. 2d 885.

In the instant case the defendants have failed, the burden of proof being upon them, to show by clear, satisfactory, and convincing evidence that a resulting or constructive trust was established under the facts. Therefore, the defendants cannot prevail in this defense as contended for by them.

The defendants base their claim of title in part on an alleged defect in the execution of the deed which conveyed the property in question from Henry A. Van Aelst and Leona M. Van Aelst to W. J. Powell and Zilah N. Powell who later conveyed the property to Nola Bailey.

Section 76-258, R. R. S. 1943, provides: "When any instrument of writing, in any manner affecting or purporting to affect the title to real estate, has been, or may hereafter be recorded for a period of ten years in the office of the register of deeds of the county wherein such real estate is situated, and such instrument, or the record thereof, because of defect, irregularity or omission, fails to comply in any respect with any statutory requirement or requirements relating to the execution, attestation, acknowledgment, certificate of acknowledgment, recording or certificate of recording, such instrument and the record thereof shall, notwithstanding any or all of such defects, irregularities and omissions, be fully legal, valid, binding and effectual for all purposes to the same extent as though such instrument had, in the first instance, been in all respects duly executed, attested, acknowledged and recorded."

As heretofore stated, the deed from the Van Aelsts to the Powells was recorded on April 25, 1945, which

exceeds the statutory requirement of 10 years. The deed from the Powells to Nola Bailey was recorded June 15, 1945. It therefore appears that any possible defects in the execution of the deed herein mentioned would likewise be cured by the passage of the 10-year period, as provided for by the above-cited statute.

While we believe the evidence establishes that Nola Bailey was the owner of the Lone Oak real estate, the equipment in the restaurant, and the business of the Lone Oak cafe, however, assuming that the title to the real estate known as the Lone Oak was not in Nola Bailey, then it is apparent that she would have qualified as the owner thereof, as opposed to the defendants, under the rules of adverse possession.

In James v. McNair, 164 Neb. 1, 81 N. W. 2d 813, this court held: "The title to land becomes complete in the occupant by adverse possession when he and his grantors have maintained an actual, exclusive, open, and continuous possession thereof, claiming title to the same against all persons, for 10 years."

As stated in Frank v. Smith, 138 Neb. 382, 293 N. W. 329, 134 A. L. R. 458: " 'The title to land becomes complete in the adverse occupant when he and his grantors have maintained an actual, continued, notorious, and adverse possession thereof, claiming title to the same against all persons, for ten years.' Lantry v. Wolff, 49 Neb. 374, 68 N. W. 494."

In Ziemba v. Zeller, 165 Neb. 419, 86 N. W. 2d 190, this court held: "The payment of taxes is an element and circumstance which may be considered together with all of the other circumstances of the case with respect to the subject of adverse possession."

In Walker v. Bell, 154 Neb. 221, 47 N. W. 2d 504, this court said: "Payment of taxes by the occupant for a series of years is a strong circumstance, in connection with others, tending to show the adverse holding and the abandonment of the property by the holder of the title."

It is apparent from the record that Nola Bailey was in adverse possession of the premises known as the Lone Oak real estate for a period of 10 years prior to her death. She held herself out as the sole owner of the real estate and paid the taxes thereon, as shown by the record, and did so from the time she obtained title on June 4, 1945, until the date of her death, August 27, 1958.

The record discloses a complete estrangement between Tom Bentley and his family for many years. His widow had previously disclaimed any interest in any property that he might own. She purportedly signed a disclaimer of any interest that she might have in his property. While this document may be questioned as to its legality, it does tend to indicate the intention of Tom Bentley's widow as to what interest she might have in any property belonging to Tom Bentley.

The evidence discloses that Nola Bailey paid federal income taxes and kept social security records and withholding tax records of employees of the Lone Oak cafe; that the business returns for personal property with reference to the Lone Oak cafe were assessed to Nola Bailey and the personal taxes paid by her; and that Tom Bentley was in fact an employee of Nola Bailey and had no interest in the business except what wages he received as an employee. In this connection, we make reference to the evidence heretofore set out.

Actions in equity, on appeal to this court, are triable de novo, subject, however, to the rule that when evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying, and must have adopted one version of the facts rather than the opposite. See Jensen v. Manthe, 168 Neb. 361, 95 N. W. 2d 699.

We find no prejudicial error in the record relating to the admissibility of evidence or the rejection of the

same, nor as to receiving in evidence certain exhibits, as contended for by the defendants.

In the light of the evidence and the authorities heretofore cited, we conclude that the judgment of the trial court should be affirmed.

AFFIRMED.