W. A. PIPKIN, W. O. Kinnebrew, Arthur S. Gibbons and The Exchange National Bank of Tampa, a national banking corporation, Plaintiffs-Appellants,

v.

FMC CORPORATION, a Delaware Corporation, Defendant-Appellee.

No. 28009.

United States Court of Appeals, Fifth Circuit.

May 26, 1970.

* Honorable Philip C. Wilkins, United States District Judge for the Eastern District of California, sitting by designation.

Louis F. Tidwell, Wm. Earle Tucker, Tampa, Fla., for plaintiffs-appellants.

Harry Kemker, Marvin E. Barkin, Tampa, Fla., Joe E. Edwards, Houston, Tex., for defendant-appellee.

Before PHILLIPS,* BELL and SIMPSON, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

Pipkin, Kinnebrew, Gibbons, and The Exchange National Bank of Tampa[1] brought this action against FMC Corporation,[2] a Delaware corporation, to recover royalties alleged to have accrued and become due to them under a License Agreement theretofore entered into by Pipkin and FMC.

From a summary judgment in favor of FMC, the plaintiffs have appealed.

From extensive discovery proceedings had and depositions taken, the following facts appeared without substantial dispute.

The License Agreement was entered into on May 15, 1946, between Pipkin, as Licensor, and FMC, as Licensee. It recited:

"* * * Licensor represents that he has invented certain new and useful improvements in the art of extracting juice and peel oil from citrus fruit, for which he has filed the following applications for U. S. Letters Patent, and that he is the sole and exclusive owner of the inventions disclosed in said applications:

| Serial No. | Filing Date | |
|---|---|---|
| 543394 | July  3, 1944 | Citrus Peel Oil Extraction |
| 543395 | July  3, 1944 | Citrus Fruit Juice Extraction |
| 544424 | July 11, 1944 | Method of and Apparatus for Extracting Juice and Peel Oil from whole Citrus Fruit |
| 544425 | July 11, 1944 | Peel Oil and Juice Extraction by Fluid Pressure;  * * *" |

On such applications patents issued, as follows:

| Patent No. | Filing Date | Issuance Date | Expiration Date |
|---|---|---|---|
| Pipkin No. 2,420,678 | 7/ 3/44 | 5/20/47 | 5/20/64 |
| Pipkin No. 2,540,345 | 7/ 3/44 | 2/ 6/51 | 2/ 6/68 |
| Pipkin No. 2,420,679 | 7/11/44 | 5/20/47 | 5/20/64 |
| Pipkin No. 2,420,680 | 7/11/44 | 5/20/47 | 5/20/64 |

The License Agreement provided:

"* * * Licensor has granted and conveyed, and by these presents does hereby grant and convey, unto Licensee, its successors and assigns, the *exclusive* right, license and privilege to

---

* Of the Tenth Circuit, sitting by designation.

1. Hereinafter referred to collectively as the plaintiffs.

2. Hereinafter referred to as FMC.

*manufacture, use, lease and sell machines embodying or employing the inventions disclosed in the aforesaid patent applications, throughout the United States and all foreign countries to the end of the term of the last to be issued U. S. Letters Patent* issued on said applications or any of them, including any substitutes, divisions, continuations or re-issues thereof, unless this agreement is sooner terminated as hereinafter provided." (Italics ours.)

Such agreement further provided:

"It is understood and agreed that if Licensee shall take out or acquire additional patents on the principle of compressing whole citrus fruit by uniform pressure and uniform support for the purpose of extracting citrus juice or citrus peel oil and other by-products, said patents shall be subject to payments of royalty by Licensee, as set forth in this agreement, as long as said agreement remains in effect."

Such agreement further provided:

" * * * that if Licensor shall hereafter make or acquire any improvements upon said inventions, the terms of this agreement shall, at Licensee's option, be extended to include and apply to such improvements, it being understood and agreed that in such event, the royalties hereinafter specified to be paid to Licensor on machines manufactured and sold hereunder embodying said inventions, shall not be increased because of the embodiment or employment of any such improvements therein in addition to said inventions."

The License Agreement, under the heading *"Royalty,"* provided:

"(a) *Amount.* Licensee shall pay to Licensor during the term hereof, *on each machine manufactured, used, leased or sold by Licensee* which embodies or employs the inventions comprehended by this agreement, a royalty equal to two and one half percent ($2\frac{1}{2}\%$) of the net selling price received from purchasers of said machines or if the Licensee leases said machines two and one half percent ($2\frac{1}{2}\%$) of the rentals collected by Licensee from lessees of said machines, * * *." (Italics ours.)

The License Agreement, under the heading *"Termination for Inadequate Patent Protection,"* provided:

" * * * that in the event Licensor is unable to obtain United States Letters Patent on said inventions, or in the event any such Letters Patent do not adequately protect Licensee to its full and complete satisfaction in the exclusive right to manufacture, use, lease and sell machines embodying or employing said inventions, then, and in either such event, Licensee shall have the right and option to terminate this agreement, * * *."

The License Agreement further provided, under the heading *"Abatement of Royalty,"* in the event a court of competent jurisdiction shall finally adjudge

" * * * that the manufacture, use, lease or sale of a particular device or structure comprehended by this agreement cannot be enjoined under the Letters Patent * * * Licensee shall thereafter be permitted to make, use, lease and sell the same device or structure as held by the court to be free of the monopoly of said Letters Patent, without the payment of any royalty or License fee whatsoever."

Finally, the License Agreement provided, under the heading *"Termination for Patent Invalidity,"* that

" * * * if at any time any of the Letters Patent comprehended by this agreement, * * * or any claim or claims thereof, shall be declared invalid by a court of competent jurisdiction, * * * then and in that event Licensee shall be released from its obligation to pay royalties under this agreement in so far, but only in so far, as respects the particular claim or claims declared to be invalid. * * *."

On July 13, 1946, Pipkin sold and assigned to Kinnebrew and Gibbons part of his interest in such patent applications

and in such License Agreement. On July 16, 1946, the individual plaintiffs assigned to The Exchange National Bank all their right, title and interest in the proceeds to be derived by them from such License Agreement.

Pipkin and Henry L. Smith made a joint invention which related to an improved mechanism for rapidly feeding whole citrus fruit into an automatic whole citrus fruit juice and peel oil extractor. Smith assigned his entire interest in such invention to FMC. Application for such patent was filed on February 1, 1947. The patent issued on December 23, 1952, as No. 2,622,733. Its expiration date was December 23, 1969. FMC exercised its option, referred to above, to have "the terms of this agreement * * * extended to include and apply to such" patent.

It clearly appears that after May 20, 1964, FMC used or employed in any way only the inventions embodied in the claims of expired patents. It did not use or employ after that date any of the inventions embodied in the claims of No. 2,420,680, No. 2,540,345, or No. 2,622,-733.[3]

At the hearing on the motion, both plaintiffs and FMC contended that the License Agreement was unambiguous.

The court concluded that the License Agreement was unambiguous; that the term thereof expired February 6, 1968; that FMC did not manufacture, use, lease or sell any machine that embodied or employed the inventions in any of the patents included in the Agreement which had not expired on May 20, 1964, and therefore FMC incurred no obligation to pay royalties after that date.

■ The question of whether a contract is unambiguous is one of law for the determination of the trial court.[4]

■ Where a contract is unambiguous, its interpretation is a question of law, to be determined by the court.[5]

By the granting provision of the License Agreement, the term thereof was to terminate at the expiration date of the last U. S. Patent to issue on any of the four applications described in such Agreement, "including any substitutes, divisions, continuations or re-issues thereof."

Patent No. 2,622,733 was an improvement patent. It clearly was not a substitute, division, continuation or reissue of Patent No. 2,540,345, the last patent to expire of the patents issued on such four applications, nor of any of them. Hence, it did not come within the clause last-above quoted and has no relevancy now.

Accordingly, we agree with the trial court that the term of the License Agreement expired February 6, 1968.

The royalty provision of the License Agreement obligated FMC to pay royalties only "on each machine manufactured, used, leased or sold" by it "which embodies or employs the inventions comprehended by this agreement." The machines which FMC manufactured, used, leased or sold after May 20, 1964, were ones which embodied or employed only inventions embraced in the claims of patents which expired on that date. None of such machines embodied or employed inventions which were within the claims of any patent here involved which had not expired on that date.

The License Agreement granted to FMC "the *exclusive* right, license and privilege to manufacture, use, lease and

3. As noted above, Patent No. 2,420,680 had expired on May 20, 1964.

4. Jones v. Chaney & James Construction Company, 5 Cir., 399 F.2d 84, 88; East Coast Electronics, Inc. v. Walter E. Heller & Co. of Fla., 5 Cir., 355 F.2d 923, 924; St. Paul Mercury Insurance Company v. Price, 5 Cir., 359 F.2d 74, 76;

Steele v. McCargo, 8 Cir., 260 F.2d 753, 758.

5. O'Brien v. Elder, (Fla.) 5 Cir., 250 F.2d 275, 278; United States v. Waterman Steamship Corporation, 5 Cir., 397 F.2d 577, 579; Lawrence v. United States, 5 Cir., 378 F.2d 452, 455; United States v. American Nat. Bank of Jacksonville, 5 Cir., 255 F.2d 504, 509.

sell machines embodying or employing the inventions disclosed in the * * * patent applications," described in such Agreement. (Italics ours.)

When a patent expires, anyone is free to use the invention embodied in its claim or claims. After the expiration of the patent, there can no longer be an exclusive right, license or privilege to use the invention embodied in its claim or claims.[6]

Moreover, from the provisions of the License Agreement above set out, with respect to patent protection, abatement of royalties, and termination for patent invalidity, it clearly appears that the parties intended that FMC's obligation to pay royalties was conditioned on patent protection. An expired patent affords no patent protection.

Absent a clear expression to the contrary in the licensing agreement for the use of the invention embodied in a patent, it will be presumed that the parties did not intend the licensee should pay royalties for such use after the expiration of the patent.[7] The License Agreement not only contained no expression manifesting that the parties intended that FMC should pay royalties for the use of the invention embodied in any one of the patents here involved, after it had expired, but by its provisions affirmatively manifested that they did not so intend.

Moreover, in Brulotte v. Thys Co., 379 U.S. 29, 32, 85 S.Ct. 176, 179, 13 L.Ed.2d 99, the court held "that a patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful *per se*," and we should avoid a construction of the License Agreement that would render it invalid.

Since after May 20, 1964, FMC did not manufacture, use, lease or sell any machine that embodied any of the patents embraced in the License Agreement which had not expired, but used only inventions embodied in expired patents, we hold it did not incur any obligation to pay royalties after May 20, 1964.

Accordingly, the judgment is affirmed.

---

6. Kellogg Co. v. Nat. Biscuit Co., 305 U.S. 111, 118, 120, 59 S.Ct. 109, 83 L.Ed. 73.

7. E. R. Squibb & Sons v. Chemical Foundation, 2 Cir., 93 F.2d 475, 477; Pressed Steel Car Co. v. Union Pac. R. Co., 2 Cir., 270 F. 518, 525;

Sproull v. Pratt & Whitney Co., 2 Cir., 108 F. 963, 965;
Perbal v. Dazor Manufacturing Corp., Mo., 436 S.W.2d 677, 689.