Francisco E. SANDOBAL, Also Known as
Francisco E. Sandoval, Appellant,

v.

ARMOUR AND COMPANY, a Corpo-
ration, Appellee.

No. 19811.

United States Court of Appeals,
Eighth Circuit.

July 13, 1970.

Rehearing Denied and Rehearing En
Banc Denied Aug. 4, 1970.

Ralph R. Bremers and Edward A. Mullery, Omaha, Neb., on brief for appellant.

William J. Riedmann, of Kennedy, Holland, DeLacy & Svoboda, Omaha, Neb., on brief for appellee.

Before BLACKMUN,* GIBSON and LAY, Circuit Judges.

GIBSON, Circuit Judge.

Plaintiff Francisco E. Sandobal filed suit in the United States District Court for the District of Nebraska for breach of a contract of employment, claiming substantial loss of wages and pension rights for an alleged wrongful discharge by defendant Armour & Company. Jurisdiction was originally claimed on the basis of diversity of citizenship and an amount in controversy exceeding $10,000. It is unclear whether jurisdiction is also claimed under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Summary judgment was entered against plaintiff on the basis of the Nebraska statute of limitations on oral contracts. A timely appeal in forma pauperis followed. The facts of the controversy are as follows.

Plaintiff was employed with Armour & Company for over 20 years as a meat-cutter and during that time had an exemplary record, except for one brief suspension in 1947 for absenteeism. In July 1962, plaintiff, while working on the "streamline gang" which performed an assembly line operation of trimming and cutting up beef carcasses, was involved in a disturbance with a fellow employee, James Davis, in which Davis was severely injured with a knife. The facts of this disturbance are the subject of substantial controversy. Following the disturbance, Davis was immediately discharged, and plaintiff was suspended and subsequently discharged. A criminal prosecution was brought against plaintiff in the Nebraska District Court, which resulted in a hung jury, and the State then dropped the charges.

Plaintiff Sandobal contends that he was completely without fault in the disturbance and his discharge as a result of it was wrongful. Plaintiff is of Mexican descent and does not read or write English. His claim is based upon a written collective bargaining agreement between the Union and the Company which provides in effect that employees may only be discharged "for proper cause." The agreement also provides that employee grievances are to be processed through a four-step grievance procedure between the Union and the Company culminating in arbitration.

Following Sandobal's suspension and subsequent discharge, he complained a number of times to various union members about not being allowed to return to work. Plaintiff also made complaints to the Company. There were several casual conversations between the Union and the Company regarding his case, but no action was forthcoming. Sandobal

---

* Mr. Justice Blackmun who sat on this panel as a member of this Court before his elevation to the United States Supreme Court did not participate in the consideration or decision of this case.

then requested an attorney, Ralph Bremers, to take charge of his complaint. Bremers wrote two letters to the Company regarding Sandobal's discharge, but received no answer. He then contacted the International Union with which the local was affiliated and also received no action. The Company took the position that it was only required to negotiate with the Union on Sandobal's behalf and that it would do nothing as long as there was an attorney in the case. The Union's position on the matter is unclear. The Company contends that the Union refused to represent Sandobal so long as there was an attorney representing him. Affidavits filed by union officials are ambiguous on the issue. Sandobal's attorney contends the only thing the Union told him was that the Company refused to negotiate as long as there was a suit pending against it, and he told them there was no suit, as of course there wasn't at that time.

The discharge occurred July 26, 1962. The complaint in this case was filed on July 25, 1967, a summons issued that day and was served the following day. The Company then filed a motion for summary judgment which was granted.

There were four grounds for the motion for summary judgment: (1) the action was barred by the statute of limitations; (2) the action was barred by the plaintiff's laches; (3) the plaintiff failed to exhaust his remedies under the grievance procedure of the collective bargaining agreement; (4) the Union is a necessary and indispensable party. The trial court's ruling was based solely on the first ground, and that is our primary concern here. However, since defendant also relies on the other grounds on this appeal, we will also deal with them.

■ Whether jurisdiction is based upon diversity of citizenship or § 301 of the LMRA, the law of Nebraska relative to the appropriate statute of limitations applies. *See* International Union, United Automobile, etc. v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L. Ed.2d 192 (1966) (holding that, absent an applicable federal statute of limitations, state statutes of limitations should be applied in § 301 cases if they are not in conflict with federal policy). Nebraska has a statute of limitations of four years on actions upon a contract not in writing, Neb.Rev.Stat. § 25–206 (Reissue 1964), and one of five years on actions upon a written contract, Neb.Rev. Stat. § 25–205 (Reissue 1964). Thus the immediate question is whether Nebraska would view this action as one based upon a written or an oral contract. Defendant contends that since extrinsic evidence must be used to prove both Sandobal's employment and a job covered by the collective agreement, it must be viewed as an action on an oral contract. Plaintiff contends that since the breach of contract arises from the written agreement not to discharge without proper cause, and he is a third party beneficiary of that contract, it is an action on a written contract.

■ Before dealing with this question specifically, it is necessary to dispose of defendant's contention that even the five-year statute has run. For purposes of this appeal, the parties agree that the date of the discharge was July 26, 1962, and the cause of action accrued on that date. This suit was filed July 25, 1967, summons issued on that date and was served on the defendant the following day. Defendant contends that under Nebraska law, a suit is not commenced until the service of summons, citing Gorgen v. County of Nemaha, 174 Neb. 588, 118 N.W.2d 758 (1962), and since the summons in this case was not served until July 26, this was one day past the five-year period. Nebraska law, of course, requires the summons be served, but the applicable statute specifically states that the date the action is commenced is the date of the summons, provided that the summons is served. Neb.Rev.Stat. § 25–219 (Reissue 1964). The Nebraska Supreme Court, in a case directly in point, has held on this issue:

"A summons issued within the time authorized by statute will give the court jurisdiction, although served

after the expiration of such period. But in all cases the summons must be issued before the bar of the statute is complete." Omaha Loan & Trust Co. v. Ayer, 38 Neb. 891, 57 N.W. 567, 568 (1894).

The *Gorgen* case involved the issuance of a defective summons, which was then followed by an alias summons. The Nebraska Supreme Court held that the date of the alias summons did not relate back to the original summons, and since the date of the alias summons was past the time limit, the action was barred. That is obviously not the case here. We conclude that if the five-year statute is applicable, this suit was timely brought.

In determining the question of the applicable statute of limitations, we note that there is no Nebraska ruling on the precise question involved. Therefore, in order to reach a decision on this issue, we will examine Nebraska law on related issues, and decisions on the limitations issue in cases arising in other jurisdictions.

We first examine Nebraska law with the case of Rentschler v. Missouri Pac. Ry. Co., 126 Neb. 493, 253 N.W. 694 (1934), a case relied on extensively by the trial court. The case was decided in 1934, a time in which it was not at all clear that collective bargaining agreements were contracts which could be enforced at law and, more specifically, whether they could be enforced by individual employees against the employer. The case was exhaustive in its review of the law at that time and was significant in being one of the earliest to hold that the agreement was binding on the employer and could be enforced by the employees as third-party beneficiaries. The case was also significant in holding that the terms of such an agreement should be broadly construed. The trial court considered this case to reflect an attitude that "a collective bargaining agreement is merely an ingredient to be considered along with the employees individual contract." We do not view *Rentschler* as restrictive toward collective bargaining agreements, but as rec-

ognizing and according legal significance to them. As stated by the Nebraska Supreme Court in *Rentschler* at 699–700:

"Recently in several cases the theory has been advanced that a collective agreement is a valid contract. * * * There is good ground for the adoption of this conclusion, for the parties on each side, through their organizations as agents, have bound themselves to certain specific rights and duties. * * *

* * * * * *

"The claim is made on behalf of the railroad company that the contract is void for lack of mutuality, yet Nebraska has gone as far as any court in protecting a third person's rights under a contract. * * * * "

In its syllabus of the case (which is the law of the case in Nebraska), the court holds:

"Such a collective agreement being a general offer, becomes a binding contract when it is adopted into, and made a part of, the individual contract of each employee. A breach of its terms will give rise to a cause of action by either party."

The *Rentschler* case was recognized at the time as being one of the most liberal decisions on the subject. *See* Annot., 95 A.L.R. 10, 37 (1936); *see also* Brisbin v. E. L. Oliver Lodge, 134 Neb. 517, 279 N.W. 277 (1938). In holding that the written collective agreement is a contract which binds both the employer and the employee, *Rentschler* appears more supportive of plaintiff's position that the action is on a written contract than of defendant's that it is on an oral one.

There are cases in Nebraska which have some bearing on the immediate question. In Diss v. State Bank, 141 Neb. 146, 3 N.W.2d 89 (1942), there was involved the question of an administrator's right to recover upon a decedent's certificate of deposit. The deposit was made in another bank in 1923 and matured and was due on demand six months later. In 1925 the first bank

went into receivership; its assets and liabilities were assumed by the defendant bank under a contract with the receiver. In 1939, the administrator of the depositor's estate claimed the deposit from the defendant bank on the basis of the contract between the bank and the receiver, since this was a liability of the original bank. The court held that this was an action on a contract for the benefit of a third person and was barred by the five-year statute of limitations. It may be noted with respect to this case that the third-party beneficiary, the depositor, would not have been named in the contract between the receiver and the defendant bank, and the proof of his claim would depend on extrinsic evidence (his certificate of deposit).

The case of Ericsson v. Streitz, 132 Neb. 692, 273 N.W. 17 (1937), which involved a third-party beneficiary suit, gives some indication of the attitude of the Nebraska Supreme Court toward statutes of limitations. The defendant Streitz, in his capacity as county judge, in 1925 received money from an administrator of a decedent's estate for the benefit of plaintiff Ericsson, who was at that time a missing heir. The money was deposited in a bank. The defendant retired as county judge in 1929 and failed to pay over the legacy to his successor in office as required by statute, Neb.Comp.Stat.1929, § 27–546. The bank failed and the money was lost. In 1935, the plaintiff filed suit against the judge and his surety on his official bond for the amount of the legacy. The defense contended that the action was barred by the four-year statute of limitation on liabilities created by statute, Neb.Comp.Stat.1929, § 20–206, but the Nebraska Supreme Court held that it was governed by the ten-year statute of limitations on actions on an official bond, Neb.Comp.Stat.1929, § 20–209.

The official bond is executed for the benefit of a large, unnamed class of persons who may be injured by a dereliction of duty on the part of the principal, and proof of the right to recover on the bond depends upon extrinsic evidence that the plaintiff is a member of that class; yet even though that proof includes liability arising by statute, which is governed by a four-year statute of limitations, the longer statute of limitations on official bonds was applied. There is a close analogy to the instant case. The written collective bargaining agreement is executed for the benefit of the Company's employees, and proof of the right to recover upon the agreement depends upon extrinsic evidence that the plaintiff is an employee; yet even though that proof includes a separate contract of employment, which might be governed by the four-year statute of limitations on oral contracts, the longer statute of limitations on written contracts would seem similarly applicable.

Howard v. Chicago, B. & Q. Ry. Co., 146 F.2d 316 (8th Cir. 1945), was a case in which an employee sued his employer for a wrongful discharge under a collective bargaining agreement. Our Eighth Circuit Court held on appeal that a prior state court judgment was *res judicata* and hence barred the suit. We also held alternatively that the suit was barred by the Nebraska five-year statute of limitations because it was brought more than 11 years after the cause of action accrued. While this decision is not determinative of the issue because the possibility of applying the four-year statute was not involved, we may note that the case has been cited with approval by the Nebraska Supreme Court on a related point. Sullivan v. David City Bank, 181 Neb. 395, 148 N.W.2d 844, 846 (1967).

Nebraska cases relied on by the defendant are not particularly helpful on this issue. Kingman v. Davis, 63 Neb. 578, 88 N.W. 777 (1902), involved written orders for goods, none of which were signed by the defendant, some of which were not signed by the plaintiff, none of which specified prices or other terms, many of which were varied by the actual goods delivered, and some of which were not delivered at all. These obviously were parol contracts.

Grant v. Williams, 158 Neb. 107, 62 N.W.2d 532 (1954), a complex assign-

ment case on its facts, contains some language favorable to defendant's position, but the basis of that decision was that the assignment in question contained no obligation to pay the plaintiff the amount claimed or any amount. *Id.* at 536–537. We agree with the *Grant* language relied upon by the trial court in this case:

> "A cause of action is not upon an instrument in writing within the meaning of the code because it is in some way remotely or indirectly connected with the instrument or because the instrument might be a link in the chain of evidence establishing the cause of action." *Id.* at 536.

But we are of the view that the collective bargaining agreement is directly related to the plaintiff's cause of action and is not a mere link in the evidence as to his employment, and as noted in *Grant:*

> "In order for an action to be upon an instrument in writing it must in itself contain a contract or promise to do the thing for the nonperformance of which the action is brought." *Id.* at 536.

The collective bargaining agreement does contain the promise of discharge for proper cause only and, as noted above, the Nebraska Supreme Court has held that a collective bargaining agreement is a contract.

Our review of Nebraska law leads us to conclude that the immediate question is very much an open one in Nebraska. Certainly there is no tendency by the Supreme Court of that state to strictly construe either collective bargaining agreements or its statute of limitations, which would suggest that the present action is barred by the four-year statute. There is a conflict in the relatively few decisions on this issue in other jurisdictions, which now should be considered.

There appear to be only two state cases which are directly relevant to the immediate question, both of which would support a decision for the plaintiff in this case. The Supreme Court of Mississippi has held that actions on collective bargaining agreements are governed by the six-year statute of limitations on written contracts, rather than the three-year statute on oral contracts. Moore v. Illinois Central Ry. Co., 180 Miss. 276, 176 So. 593, 596 (1937). To like effect, the Supreme Court of Arkansas in H. B. Deal & Co. v. Bolding, 225 Ark. 579, 283 S.W.2d 855, 858 (1955), applied the five-year statute of limitations on written contracts, rather than the three-year statute on oral contracts in a third-party beneficiary contract for unpaid wages.

Most of the cases dealing with this question have arisen in the federal courts. Cases from the Fifth, Sixth, and Ninth Circuits are relied upon by the plaintiff, while the defendant relies on cases from the Seventh Circuit and the Eastern District of Arkansas. We will examine the plaintiff's cases first.

Following the Mississippi Supreme Court's ruling in Moore v. Illinois Central Ry. Co., *supra,* the case was removed for trial to the federal district court. The district court struck the defendant's demurrer to the complaint based on the three-year statute of limitations on oral contracts. The Fifth Circuit on appeal held that it was not bound by the Mississippi Supreme Court's decision and that the action should be barred by the three-year statute. The Supreme Court of the United States reversed this decision, holding that the federal court was bound by the state court's interpretation of its statutes. Moore v. Illinois Central Ry. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1941), rev'g 112 F.2d 959 (5th Cir. 1940).

In a case governed by Nevada law, the Ninth Circuit has held that an action on a collective bargaining agreement was governed by a statute allowing six years for actions "founded upon an instrument in writing," rather than one of four years for oral contracts. Union Pac. Ry. Co. v. Olive, 156 F.2d 737 (9th Cir. 1946). It is interesting to note that one of the cases relied upon by the court in its decision is the Nebraska case of

Rentschler v. Missouri Pac. Ry. Co., discussed above.

The case of Reliford v. Eastern Coal Corporation, 260 F.2d 477 (6th Cir.), cert. denied, 359 U.S. 958, 79 S.Ct. 797, 3 L.Ed.2d 765 (1958), was a suit against an employer by an employee who had contracted silicosis while working as a coal miner. The basis of the cause of action was a collective bargaining agreement in which the employer had agreed to provide workmen's compensation for silicosis injuries; the employer had failed to comply with this agreement. The trial court held that the action was barred by a Kentucky statute of limitations on actions for personal injuries of one year. The Sixth Circuit Court of Appeals held that the action should be governed by the Kentucky statute of limitations of 15 years on written contracts. Ky.Rev.Stat. § 413.090. Although not specifically discussed by the court, it appears that the action would also have been barred by the Kentucky statute of limitation of five years on oral contracts, Ky.Rev.Stat. § 413.120, had it been applied.

The Seventh Circuit seems to be the only jurisdiction which has specifically considered the immediate issue to have concluded that suits by employees on collective bargaining agreements are governed by statutes of limitations on oral contracts. The first case to so hold was Kordewick v. Indiana Harbor Belt Ry. Co., 157 F.2d 753 (7th Cir. 1946), cert. denied, 329 U.S. 806, 67 S.Ct. 502, 91 L.Ed. 688 (1947). In that case, the relevant statutes of limitations in the state of Illinois were five years for oral contracts and ten years for written contracts. This decision was followed three years later in a case involving the same contract, but arising in Indiana, where the statutes of limitations were six years for oral contracts and 20 years for written contracts. Albrecht v. Indiana Harbor Belt Ry. Co., 178 F.2d 577 (7th Cir. 1949), cert. denied, 339 U.S. 949, 70 S.Ct. 804, 94 L.Ed. 1363 (1950). A Seventh Circuit decision applying the same principle in a case arising under § 301 of the LMRA, 29 U.S.C. § 185, was affirmed by the Supreme Court on the ground that under the federal statute, which has no limitation of its own, the federal court must apply state statutes of limitations. International Union, United Automobile, etc. v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), aff'g 346 F.2d 242 (7th Cir. 1965).

The Seventh Circuit cases are contrary to the weight of authority in all other jurisdictions which have considered the issue, and we have some doubt that they were correctly decided. We view with favor the Supreme Court of Arkansas's analysis of this immediate issue. The Arkansas Court viewed the *Kordewick* case as being in conflict with the rule generally followed in those jurisdictions where the question was presented, and with the general proposition that "actions by third persons based on written contracts which are made for their benefit are generally held to be within the statute of limitations governing actions on written contracts." H. B. Deal & Co. v. Bolding, 283 S.W.2d at 858.[1] In any event, the Seventh Circuit cases may be partially distinguished on the grounds that both Indiana and Illinois have exceptionally long statutes of limitations for written contracts as well as liberal statutes of limitations on oral contracts,[2] whereas in most other jurisdictions where the question has arisen, as in Nebraska, both limitations are considerably shorter. However, the Sixth Circuit, contrary to the Seventh Circuit, applied Kentucky's long 15-year statute on written contracts in an analogous sit-

---

1. Defendant also cites the case of Roberts v. Thompson, 107 F.Supp. 775 (E.D.Ark. 1952) as supporting its position. But that case clearly seems to have been wrongly decided under Arkansas law. *See* H. B. Deal & Co. v. Bolding, *supra*.

2. Illinois: 5 year oral—Ch. 83, § 16, Ill. Rev.Stat.; 10 year written—Ch. 83, § 17, Ill.Rev.Stat. Indiana: 6 year oral— Burns' Ind.Stat.Anno. § 2–601; 20 year written—Burns' Ind.Stat.Anno. § 2–602.

uation. Reliford v. Eastern Coal Corp., 260 F.2d 447 (6th Cir. 1958).

In reaching a decision as to whether the instant action is one based upon a written or an oral contract for purposes of the statute of limitations, we may analyze the questions which must be raised and the proof available to determine them. The primary question, of course, is the Company's right to discharge an employee. In the absence of an agreement to the contrary, the Company would have the right to discharge an employee for any reason whatsoever. But here the collective bargaining agreement significantly modified this right and required that employees only be discharged for proper cause. This is a written term of the contract and of course affords substantial protection to employees which they would not otherwise have. This written promise, signed by the Company and allegedly breached by it, is the predicate for this action.

The relief which can be granted to the plaintiff in this case is also governed by the written terms of the contract. Rates of pay, retirement, and pension rights are all specified in the collective bargaining agreement.

There is one significant fact in this case which must be proved by evidence extrinsic to the written collective bargaining agreement—that is plaintiff's employment in a job covered by the agreement. But that employment is not disputed here, nor is it necessary to resort to parol testimony to prove it. The Company's own records provide a complete memorandum of plaintiff's employment, his length of service, job classification, and other pertinent information. It is important to note in this respect that the terms of plaintiff's employment were not a subject over which he had any direct control once he entered into employment with the Company in a job covered by the agreement. The provisions of the agreement were as binding upon him as they were upon the Company and could not be varied by any individual agreement. Thus his acceptance of employment can be viewed as the acceptance of the written collective bargaining agreement; in this light the case can be considered analogous to those holding that "where an instrument containing all the terms of a completed contract between two parties is executed by one of the parties and accepted or adopted by the other, the instrument constitutes a contract in writing within the meaning of the statute of limitations, notwithstanding the fact that the instrument may not be signed by the latter." Annot., 3 A.L.R.2d 809, 819 (1949).

The observations of Professor Corbin in his treatise on contracts are especially relevant to this question:

"The term 'written contract' has no single and uniform meaning. * * * The considerations affecting the determination are very different, when the issue is as to the existence of a prerequisite to obligation, from those that are decisive when the application of the so-called 'parol evidence rule' or of some specific 'statute of limitations' is in question.

" * * * No statute should be held to prevent enforcement if the evidential writings are sufficient to attain the purpose of the statute in preventing fraud and error, even though some supplementary parol evidence is necessary." Corbin on Contracts, § 31.

In the case before us, there is no controversy between the parties as to the terms of the contract or the circumstances of the plaintiff's employment. The only significant disagreement relates to facts surrounding his discharge which constitute the alleged breach of contract. Such facts could of course be proved by parol evidence even were plaintiff to have been a signatory to the collective bargaining agreement. In the Arkansas case of H. B. Deal & Co., supra, discussing third-party beneficiary contracts, there was a contention substantially similar to that made by defendant in the case at bar; the Arkan-

sas Supreme Court noted that the cases it relied on were:

"* * * in line with the general rule to the effect that the necessity of introducing evidence extrinsic to a written contract to identify a party named therein, to show performance, or to establish the amount of money to which plaintiff is entitled under such contract where there is an obligation to pay some amount, does not render inapplicable a statute of limitations pertaining to written contracts. * * * The fact that oral proof was required to identify plaintiffs as third party beneficiaries under the written contract and to establish the amount due each thereunder does not prevent the five year statute of limitations, Ark.Stats. Sec. 37–209, from applying here." H. B. Deal & Co. v. Bolding, 283 S.W.2d at 858.

We conclude that the statute of limitations relating to contracts in writing governs this action.

Several other grounds were relied on by the Company in its motion for summary judgment. At oral argument, the Company urged us not to reach a decision on these grounds since they were not passed on by the court below. However, they were initially raised and fully briefed by the Company on appeal, and we feel it is proper to dispose of them in this opinion so as to permit an expeditious disposition of this suit. They are not of any considerable difficulty.

 First of all, the Company contends that the action is barred by the plaintiff's laches. It is highly doubtful that there has been any laxity on the plaintiff's part in this case. From the time of his discharge, the Company has been aware that he was dissatisfied with the disposition of his case. Laches is a doctrine ordinarily applied in actions of an equitable nature and is rarely, if ever, invoked as a bar to an action at law seeking damages for breach of contract. Furthermore, even in equitable situations, it is not applicable unless there has been harmful reliance by the other party. No such harm is involved in this case, except of course that the defendant will be answerable in damages if in fact it has breached its contract.

 Secondly, the Company contends that the failure of the plaintiff to exhaust his remedies under the grievance procedure of the collective bargaining agreement is a bar to his suit here. This contention is not suitable for summary judgment in this case. There is substantial disagreement between the parties as to whether plaintiff did attempt to comply with the grievance machinery and whether his efforts were blocked by the wrongful acts of the Company and the Union. These are issues of fact which must be determined by a full trial. Also in this connection, it appears to be Nebraska law that "refusal to arbitrate is not available [as a defense] to the parties in an action growing out of the contract." Wilson & Co. v. Fremont Cake & Meal Co., 153 Neb. 160, 43 N.W.2d 657, 665 (1950); Rentschler v. Missouri Pac. Ry. Co., *supra*.

 Finally, the Company contends that the Union is an indispensable party to this suit under Rule 19, Fed.R.Civ.P. Such a contention, even if sound, would not be grounds for summary judgment which is a decision on the merits. The proper procedure would be to give the plaintiff an opportunity to join and to dismiss upon failure to do so. But we do not see that the Union is an indispensable party in this action. There are two essential tests of an indispensable party: (1) can relief be afforded to the plaintiff without the presence of the other party? (2) can the case be decided on its merits without prejudicing rights of the other party? Both of these tests applied in this case indicate that the Union is not an indispensable party. The plaintiff seeks only monetary damages from the Company for his alleged wrongful discharge, and of course this relief can be granted without the presence of the Union. A decision awarding judgment to the plaintiff

would in no respect affect any rights of the Union or any of its members.

The decision granting summary judgment is reversed and remanded for further proceedings consistent with this opinion.