**MOTOR CARRIERS COUNCIL OF ST. LOUIS, INC., et al., Appellees,**

**v.**

**LOCAL UNION NO. 600, Affiliate of International Brotherhood of Teamsters, Chauffers, Warehousemen and Helpers of America, Appellants.**

No. 73–1023.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 10, 1973.

Decided Nov. 7, 1973.

Harry H. Craig, St. Louis, Mo., for appellants.

Charles Alan Seigel, St. Louis, Mo., for appellees.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and ROSS, Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

This is an appeal by Local Union No. 600, Affiliate of International Brother-hood of Teamsters, Chauffers, Ware-housemen and Helpers of America, here-inafter Local 600, from judgment deter-mining that Local 600 had engaged in a strike in breach of an existing collective bargaining agreement containing a no-strike clause and that Local 600 was li-able to plaintiffs for damages caused by such strike. Jurisdiction of the District Court is established by 29 U.S.C. § 185.

Plaintiff Motor Carriers Council of St. Louis, Inc., is a Missouri corporation organized to aid its members in the set-tlement of labor disputes and in other matters. The individual plaintiffs are members of the Council and are engaged in the business of common carriers of freight and are employers of members of Local 600.

Prior to the opening of the trial, it was agreed by the court and counsel that the liability issue, which was common to all parties, be first tried with the dam-age issue reserved for later determina-tion in event liability is established. The liability issue was tried to Judge Harper. A well-considered memorandum opinion (not reported) was filed Decem-ber 14, 1972, setting forth the findings of fact and conclusions of law and the basis upon which the liability was deter-mined. Incorporated in the order is a 28 U.S.C. § 1292(b) certification. This court permitted an interlocutory appeal on the liability issue.

Plaintiffs and Local 600 were parties to a National Master Freight Agreement and a Central States Area Supplemental Agreement entered into on or about April 1, 1967, covering a three-year period with provision for termination and re-newal thereof.

The pertinent parts of the agreement as set out in the trial court's opinion are:

Article 37 of the National Agree-ment provides in part, page 50, as follows:

Section 1. This Agreement shall be in full force and effect from April 1, 1967, to and including March 31, 1970, and shall continue from year to year

thereafter unless written notice of desire to terminate the Agreement is served by either party upon the other at least sixty (60) days prior to date of expiration.

Section 2. Where no such cancellation or termination notice is served and the parties desire to continue said Agreement but also desire to negotiate changes or revisions in this Agreement, either party may serve upon the other a notice at least sixty (60) days prior to March 31, 1970, or March 31st of any subsequent contract year, advising that such party desires to revise or change terms or conditions of such Agreement.

Section 3. Revisions agreed upon or ordered shall be effective as of April 1, 1970, or April 1st of any subsequent contract year. The respective parties shall be permitted all legal or economic recourse to support their requests for revisions if the parties fail to agree thereon.

Article 43 of the Central States Supplemental Agreement, page 63, provides in part:

The Union and the Employers agree that there shall be no strike, lockout, tie-up or legal proceedings without first using all possible means of settlement, as provided for in this Agreement, and in the National Agreement, if applicable, of any controversy which might arise.

By letter dated December 17, 1969, Local 600 served upon each of the plaintiffs a notice that it desired "to negotiate changes or revisions in the National Master Freight Agreement and in all area, regional and local supplements * * * for the contract period commencing April 1, 1970, as provided in Article 37 thereof."

Actual negotiations for changes and revisions of the bargaining agreement were commenced in Washington in February of 1970. Agreement was reached on many issues prior to March 31, 1970, but no agreement had been reached on pay increases. Negotiations continued and an agreement was reached on the monetary issues in the early morning of April 2. A supplemental agreement reflecting the changes agreed upon was signed about April 28 by the appropriate representatives of the employers and the Union. Local 600 signed the supplemental agreement which was effective as of April 1, 1970.

At approximately 12:01 a. m. on April 1, 1970, Local 600 authorized and directed the driver employees of each employer plaintiff to strike and cease work. The strike followed and the cessation of work continued until on or about May 8, 1970.

▆▆▆ Local 600 does not deny the existence of the no-strike clause contained in Article 43 heretofore set out. Local 600's primary contention is that the contract containing the no-strike clause terminated on March 31, 1970, because no new agreement as to contract modifications and revisions had then been reached. The trial court rejected such contention upon the basis of the following reasoning:

Local 600 contends that, because many of the issues were still not resolved on March 31, 1970, because there was still a significant disparity between the parties' positions on wages, and because of the participation by the Federal Mediation and Conciliation Service on April 1, 1970, the bargaining had reached an impasse. This conclusion is untenable. The record clearly shows that there was no impasse. During the period of January 7th through April 28th, 1970, there was no interruption in the negotiations, there was no time when any party refused to come to the bargaining table, and there was no final contract proposal submitted by either party.

Simply because the parties had not yet agreed on certain changes and revisions by March 31, 1970, does not mean that the parties had failed to agree within the meaning of the contract. Obviously, the terminology "fail to agree" was intended to mean something in the nature of an impasse or

deadlock. If this were not the case the parties would always "fail to agree" upon the commencement of any negotiations, thus permitting "all legal or economic recourse" by the parties at that point. It is evident that this was not the intent of the parties. By a clear preponderance of the evidence plaintiffs have shown that there was no failure to agree within the meaning of Section 3 of Article 37 of the National Agreement. Local 600 violated Article 43 of the Central States Supplemental Agreement when it authorized the strike which lasted from April 1, 1970, to May 8, 1970.

We agree with such determination.

Section 1 of Article 37 provides for the notice to be given to terminate the contract. Section 2 provides for notice to be given where the parties desire the contract to continue but also desire to negotiate some changes in the agreement. Local 600 concedes the notice it served was a Section 2 notice. Section 2 contains no provision for termination if the negotiations are not consummated by March 31, 1970. Section 3 provides that revisions agreed upon shall be effective as of April 1. Such provision recognizes the possibility that negotiations may not be completed by April 1 and assures that any agreement entered into shall be effective retroactively to April 1. The contract ultimately entered into honors the provision that the contract be effective as of April 1.

■ The last sentence of Section 3 reads: "The respective parties shall be permitted all legal or economic recourse to support their requests for revisions if the parties fail to agree thereon." Such sentence neither expressly nor by fair implication provides for the termination of the 1967 contract if agreement is not reached by March 31. The court in the portion of the opinion heretofore quoted treated the contract as being unambiguous. The issue of whether a contract is ambiguous is one of law for resolution by the trial court in the first instance, subject to review by the appellate court. Metropolitan Paving Co. v. City of Aurora, 449 F.2d 177, 181 (10th Cir. 1971); Pipkin v. FMC Corp., 427 F.2d 353, 356 (5th Cir. 1970); Steele v. McCargo, 260 F.2d 753, 758 (8th Cir. 1958).

As stated by Judge Hand in Eddy v. Prudence Bonds Corp., 165 F.2d 157, 163 (2d Cir. 1947), "appellate courts have untrammelled power to interpret written documents." However, we agree with the trial court that the contract when considered as a whole is not ambiguous in the respects here material and agree with the trial court's interpretation of the contract.

■ If contrary to our holding immediately above, the contract should be considered ambiguous, the result here would be no different. The extrinsic evidence strongly supports the interpretation made.

As Judge Harper points out, the Central States Supplemental Agreement, Section 68, provides: "The term of this Supplemental Agreement is subject to and controlled by all the provisions of Article 37, of the National Agreement between the parties hereto." Frank Fitzsimmons, who headed the national union bargaining committee, repeatedly advised Local 600 that the negotiations were continuing, that the strike that Local 600 was conducting was not authorized and that Local 600 should order its members to return to work. The interpretation of the national contract by the national officers is entitled to great respect.

■ We reject Local 600's contention that the national union bargaining team had no authority to represent Local 600 upon the basis stated in Judge Harper's well-reasoned opinion. The pertinent portion of the opinion reads:

Much of defendant's evidence at trial was directed toward the position of defendant that the International Union and the National Union negotiating team did not have authority to represent defendant. Defendant apparently abandoned this position since its only contention in its post trial brief is

that "plaintiffs have failed to establish by a clear preponderance of the evidence that the parties had not failed to agree on revisions in the April 1, 1967, contract on its expiration date of March 31, 1970.

Local 600 had authorized the national negotiating committee to negotiate for it the 1970 National Agreement. The power of attorney Local 600 gave the national negotiating committee on November 6, 1966, had not been revoked and was still in force for the 1970 negotiations. Both the International Union and Local 600 considered that the National Negotiating Committee had the authority to negotiate on behalf of Local 600 with respect to the National Agreement. Although Donald Lane testified that it was never his understanding that the National Negotiating Committee could negotiate on behalf of Local 600 after March 31, 1970, there is nothing to indicate the authority of the National Negotiating Committee would end at this point. At no time did Local 600 advise anyone that it was not being represented by the National Negotiating Committee.

Local 600's contention that plaintiffs should have submitted the subject matter of this action through grievance committee procedures lacks merit. This issue was not raised in the trial court by pleadings or otherwise. Issues not raised in the trial court cannot afford a basis for reversal upon appeal absent unusual circumstances. Smith v. American Guild of Variety Artists, 368 F.2d 511, 514 (8th Cir. 1966); Sisco v. McNutt, 209 F.2d 550, 553 (8th Cir. 1954). No extraordinary circumstances which would warrant a departure from the general rule above stated have been shown.

Defendants have failed to demonstrate that Judge Harper's decision on the liability issue is induced by any erroneous view of the law or that his fact findings are not supported by substantial evidence or are clearly erroneous.

Affirmed.