Billy G. **BUTLER**, Plaintiff,

v.

**YELLOW FREIGHT SYSTEM, INC.**, and Local Union No. 823, International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, Defendants.

Civ. A. No. 20374–3.

United States District Court, W. D. Missouri, W. D.

April 3, 1974.

Dana B. Badgerow and John A. Biersmith, Kansas City, Mo., for plaintiff.

John J. Kitchin, Kansas City, Mo., for Yellow Freight System, Inc.

Daniel J. Leary, Joplin, Mo., for Local Union No. 823.

ORDER DENYING DEFENDANTS' MOTIONS FOR STAY OF PROCEEDINGS TO ENFORCE JUDGMENT, DENYING DEFENDANTS' MOTIONS TO DISSOLVE THE TEMPORARY RESTRAINING ORDER, DENYING DEFENDANTS' MOTIONS FOR JUDGMENTS NOTWITHSTANDING THE VERDICT AND FOR A NEW TRIAL, AND PERMANENTLY ENJOINING DEFENDANTS

WILLIAM H. BECKER, Chief Judge.

This is an action authorized by Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), involving alleged violations of the collective bargaining contract between the defendant employer and the defendant labor organization. Jurisdiction is based on Section 185, Title 29, United States Code, commonly known as Section 301 of the National Labor Management Relations Act.

On June 18, 1973, a jury returned a verdict in favor of the plaintiff and against both defendants. The jury assessed plaintiff's actual damages against defendant Yellow Freight System, Incorporated in the amount of $28,000.00 and exemplary or punitive damages were assessed against the same defendant in the amount of $7,000.00. With respect to defendant Local Union No. 823, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter referred to as Local Union No. 823), the jury assessed plaintiff's actual damages in the amount of $6,500.00 and exemplary or punitive damages were assessed against this same defendant in the amount of $30,000.00.

On June 27, 1973, defendant Local Union No. 823 filed herein its "Motion for Judgment Notwithstanding the Verdict and for New Trial," including therewith suggestions in support thereof.

On June 27, 1973, defendant Yellow Freight System, Incorporated filed herein its "Motion for Judgment Notwithstanding the Verdict and for New Trial," including therewith suggestions in support thereof.

On June 28, 1973, plaintiff filed herein, pursuant to the provisions of Rule 60 of the Federal Rules of Civil Procedure, a "Motion for Correction of Judgment," therein stating that ". . . through clerical mistake, oversight, omission or inadvertence said form of judgment was by the clerk entered immediately following the verdict of the jury pursuant to Rule 58 as though the only relief to be granted plaintiff were for the recovery of money whereas the plaintiff was also held to be entitled to other relief as set forth in the form of judgment proposed by plaintiff and again submitted herewith as Exhibit B."

On July 3, 1973, defendant Yellow Freight System filed herein suggestions in opposition to plaintiff's motion for correction of judgment.

Thereafter, on July 11, 1973, an amended judgment was entered, therein declaring and providing, among other things, that ". . . the plaintiff's company seniority date is May 6, 1959 for all purposes and to be dovetailed with such seniority date among all other over-the-road truck driver employees of defendant Yellow Freight System, Inc. at its Baxter Springs, Kansas terminal."

On July 18, 1973, defendant Local Union No. 823 filed herein an amended motion for judgment notwithstanding the verdict and for new trial, therein challenging the entry of the amended judgment on the grounds (1) that there was

"nonsufficient, competent and probative evidence upon which the Court could find and determine that plaintiff was entitled to a seniority date of May 6, 1959"; (2) that as a "matter of law plaintiff cannot be entitled to a seniority date of May 6, 1959"; and (3) that the ". . . Court erred in granting plaintiff's Motion For Correction of Judgment without making proviso for the addition as parties of all those drivers on Yellow's seniority roster at Baxter Springs, Kansas affected by the grant of seniority to May 6, 1959 to participate in the proceedings herein."

On July 18, 1973, Yellow Freight System also filed herein an amended motion for judgment notwithstanding the verdict and for new trial, therein stating that the ". . . Court erred in allowing plaintiff to amend his Complaint for monetary damages after all the evidence was concluded and during the instruction conference to seek declaratory relief that he was entitled to his seniority date from May 6, 1959, and further in granting the plaintiff that seniority by the amended judgment entered July 11, 1973."

A hearing on defendants' post-trial motions, including the present motions for judgment notwithstanding the verdict and for a new trial, was held on August 21, 1973. Other post-trial proceedings and additional briefs have ensued since the argument with respect to the original post-trial motions. The last letter brief was received March 22, 1974, accompanied by a relevant decision of the United States District Court for the District of Kansas in Dudley v. Woods Industries, Inc., et al., Civil Action No. KC–3491 (D.Kans., March 20, 1974).

With insignificant exceptions and variations, defendants' numerous contentions in support of the motions for judgment notwithstanding the verdict and for a new trial may be summarized into the following general contentions: (1) that the Court erred in not permitting certain testimony as to the meaning of the collective bargaining agreement and the Change of Operations Committee decisions; (2) that plaintiff's action is barred by the statute of limitations; (3) that the Court erred in its instructions to the jury as to interpretation of the contract; (4) that the Court erred in allowing plaintiff to amend his complaint and that the granting of declaratory and compensatory relief was in error; and (5) that the Court erred in submitting the issue of exemplary or punitive damages to the jury.

Defendants initially contend that witnesses Karsten, Kitts, Pickens, Melton and Bath should have been allowed to testify as to the meaning and effect of the applicable sections of the collective bargaining agreement and the Change of Operations decisions. In support thereof, defendants assert that ". . . the courts have consistently allowed oral testimony from the parties to a collective bargaining contract as to their understanding of the terms, provisions and procedures under the agreement, as well as to various oral agreements made thereunder." In support of that statement defendants cite the single case of Watson v. International Brotherhood of Teamsters, 399 F.2d 875 (5th Cir. 1968). The Watson case is factually distinguishable to the case at bar. That case involved a preexisting oral agreement between the parties which was not abrogated by the subsequent nonintegrated written agreement. The written instrument even contained a provision which provided that such previous agreements be continued.

The issue whether a contract is ambiguous or otherwise subject to extrinsic interpretation is a matter of law for initial resolution by the trial court. Motor Carriers Council of St. Louis, Inc. v. Local Union No. 600, 486 F.2d 650 (8th Cir. 1973); Metropolitan Paving Co. v. City of Aurora, 449 F.2d 177, 181 (10th Cir. 1971); Pipkin v. FMC Corp., 427 F.2d 353, 356 (5th Cir. 1970); Steele v. McCargo, 260 F.2d 753, 758 (8th Cir. 1958). The contract in the case at bar in its material terms, when considered as a whole, was not ambiguous, and did not otherwise require the testimony of the lay witnesses to determine the inter-

pretation and construction of terms contained therein. *Cf.,* Motor Carriers Council of St. Louis, Inc. v. Local Union No. 600, 486 F.2d 650, 653 (8th Cir. 1973). Section 3 of Article 5 clearly delineated the agreement of the parties, expressly describing what was to be done in the precise circumstances of this case. That agreement was correctly applied by the Change of Operations Committee in its decision of June 16, 1965. In a case of this type, neither Mr. Kitts nor any other individual could properly have been permitted to testify to any practice, intent or subsequent action contrary to the terms of the basic agreement. Further, any proffered evidence, even if otherwise admissible, would not have been competent to divest this plaintiff of those seniority rights guaranteed him by the written collective bargaining agreement. The proffered testimony was conclusory, argumentative, and otherwise inadmissible.

Defendants' second contention is that plaintiff's cause of action is barred by the statute of limitations.

■ Defendants correctly state that the applicable statute of limitations in an action under Section 301 of the Labor Management Relations Act is that limitation period set forth in the applicable state statute. International Union, United Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). Defendants then proceed with a lengthy debate as to whether Kansas or Missouri law is to be applied. That choice of law question need not be considered nor decided with respect to the case at bar for the result is the same, regardless of the choice. Both Kansas[1] (K.S.A. Section 60–511) and Missouri (R.S.Mo. Section 516.120) apply a five year limitation period with respect to written contracts. Therefore, because this action is based on a written contract, a five year limitations period must apply. *See,* Sandobal v. Armour and Company, 429 F.2d 249, 251 (8th

Cir. 1970). The only question to be determined is whether the plaintiff's cause of action had matured or vested fully by June 8, 1967.

The record reveals that plaintiff did not file his grievances until July 5, 1967. The grievances were denied by the Joint Conference on August 2, 1967. Therefore, it does not appear from the record and facts presented that plaintiff possessed a viable and fully vested cause of action on June 8, 1967, under the doctrine of Vaca v. Sipes, *supra.* As of that date, plaintiff had not initiated or exhausted his administrative remedies through the appropriate grievance procedures. Further, the record does not reveal that plaintiff was fully aware that an administrative decision adverse to his claim would be made. There is no indication that pursuit of administrative remedies was acknowledged to be a meaningless and wasted procedure.

■ Where administrative grievance procedures are established, it is settled that an employee, absent exceptional circumstances not present in the case at bar, must at least attempt to exhaust those procedures before resorting to a judicial remedy. Vaca v. Sipes, 386 U.S. 171, 184, 87 S.Ct. 903, 17 L.Ed.2d 842, 854 (1967); Republic Steel Corp. v. Maddox, 379 U.S. 650, 652, 85 S.Ct. 614, 13 L.Ed.2d 580, 583 (1965); Orphan v. Furnco Construction Corp., 466 F.2d 795, 798 (7th Cir. 1972).

■ Defendants' reliance on such cases as Falsetti v. Local Union No. 2026, 355 F.2d 658 (3rd Cir. 1966) and Schatte v. International Alliance, 182 F.2d 158 (9th Cir. 1950) is misplaced. Those cases are factually distinguishable from the case at bar. Not until plaintiff had at least attempted to pursue his administrative remedies could the present action have been maintained. Defendants' statute of limitations contention is without merit. *Cf.* Dudley v. Woods Industries, Inc., et al., Civil Action No. KC–3491 (D. Kans., March 20, 1974).

1. *See,* Dudley v. Woods Industries, Inc., et al., Civil Action No. KC 3491 (D.Kans., March 20, 1974) cited *supra* in the text.

Defendants' next contention is that the Court erred in its instructions to the jury as to the interpretation of the contract. In support thereof, defendants generally state that the Court's instructions completely misapplied the law, the facts and the contract.

The questions of law resolved in the instructions have been thoroughly argued and determined in conferences held prior to and during trial. Defendants have failed to present any significant factual or legal arguments which would warrant any finding of error. The instruction contention is unsupported by any controlling or persuasive authority.

Defendants further assert that the Court erred in allowing the plaintiff to amend his complaint, and that the granting of declaratory and compensatory relief pursuant to the amendment was in error.

■ The granting of leave to amend the prayer of plaintiff's complaint to specifically seek a declaration of seniority rights was proper under the circumstances presented. Under the modified federal system of notice pleading, the prayer for declaratory and compensatory relief was implied. Specificity of legal theory is not required in the federal courts. Perma Life Mufflers v. International Parts Corp., 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968).

■ In respect to the award of declaratory relief that the plaintiff be adjudged to be entitled to his rightful seniority, it is concluded that the award was not erroneous. Such reinstatement of the plaintiff to his rightful seniority was proper and preferable under the circumstance presented. See, De Arroyo v. Sindicato de Trabajadores, 425 F.2d 281, 290 (1st Cir. 1970). The verdict of the jury for damages and the substantial evidence on which it was based establish the seniority right in question. The termination of the continuing effects of the

denial to the plaintiff of his contractual rights and his right to fair representation require such a declaration. This is vividly demonstrated by the pretrial and post-trial complaints of the employer and the union to the declaratory relief requiring them to accord the plaintiff his judicially established underlying rights. In the absence of the declaratory relief, plaintiff is threatened with a denial of his rights throughout his employable life expectancy. Further, in the absence of such declaratory relief, plaintiff may feel that he must initiate a new grievance in which he will be represented by the same union that is even now stubbornly denying that he possesses his contractual seniority rights. The needs of industrial peace also warrant the award of declaratory relief.

Further, the award of actual or compensatory damages was proper. The jury was properly instructed and returned its findings. Defendants have failed to show that those findings were in any way erroneous or excessive.[2]

Defendants finally contend that the Court erred in submitting the issue of exemplary or punitive damages to the jury. Defendants state that punitive damages can never be awarded under Section 301, citing in support thereof the following cases: United Shoe Workers of America, AFL–CIO v. Brooks Shoe Manufacturing Co., 298 F.2d 277 (3rd Cir. 1962); St. Clair v. Local Union No. 515, 422 F.2d 128 (6th Cir. 1969); Williams v. Pacific Maritime Association, 421 F.2d 1287 (9th Cir. 1970) and Dill v. Greyhound Corporation, 435 F.2d 231 (6th Cir. 1970).

■ The cases relied upon by the defendants have been previously reviewed and thoroughly discussed during pretrial and trial conferences. Those cases have again been reviewed for purposes of this opinion. It is apparent that some courts have determined that exemplary or puni-

---

2. Richardson v. Communications Workers of America, AFL–CIO, 486 F.2d 801, 806–807 (8th Cir. 1973); see also, Krall v. Crouch Brothers, Inc., 473 F.2d 717 (8th Cir. 1973); Scoville v. Missouri Pacific R.R., 458 F.2d 639 (8th Cir. 1972); O'Brien v. Stover, 443 F.2d 1013 (8th Cir. 1971); Perry v. Bertsch, 441 F.2d 939 (8th Cir. 1971).

tive damages are not recoverable in Section 301 actions. It is further apparent that the reasoning in support contained in some of those cases is questionable. Numerous factual distinctions in the cases relied on by defendants can also be made. However, the early line of cases to which the defendants refer and on which they rely, contrast sharply with the more recent decisions on the question of exemplary or punitive damages in Section 301 actions. This later line of cases includes the following: Wanzer & Sons, Inc. v. Milk Drivers Union, Local 753, 249 F.Supp. 664 (N.D.Ill.1966); Tippett et al. v. Liggett & Myers Tobacco Co. et al., 316 F.Supp. 292 (M.D.N.C. 1970); Patrick v. I. D. Packing Company Inc., 308 F.Supp. 821 (S.D.Iowa 1969); Joint Board of Cloak, Shirt and Dressmakers Union v. Senco, Inc., 289 F.Supp. 513 (D.Mass.1968) and Zamora v. Massey-Ferguson, Inc., 336 F.Supp. 588 (S.D.Iowa 1972). This later trend in the decisions, which appears to state the better rule of law, supports the conclusion that under appropriate circumstances, exemplary or punitive damages may be awarded in Section 301 cases based on the doctrine of Vaca v. Sipes, *supra*.

The Supreme Court of the United States has affirmatively stated that district courts must fashion appropriate remedies in Section 301 cases. Vaca v. Sipes, 386 U.S. 171, 187, 87 S.Ct. 903, 17 L.Ed.2d 842, 856 (1967); Textile Workers Union v. Lincoln Mills, 353 U.S. 448,

456–457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972, 980 (1957); *see also*, Wanzer & Sons, Inc. v. Milk Drivers Union, Local 753, 249 F.Supp. 664, 669 (N.D.Ill. 1966); Tippett et al. v. Liggett & Myers Tobacco Co., et al., 316 F.Supp. 292, 298 (M.D.N.C.1970).[3] That mandate, taken in conjunction with the absolute silence of Section 301 on the question of exemplary or punitive damages, would appear to lend great support to the proposition that such damages can be allowed in appropriate factual circumstances.

However, in accordance with the mandate of the Supreme Court, remedies under Section 301 must be carefully and specifically tailored to meet the problems and needs that arise in a particular factual context.[4] Where the goal of Section 301 (regaining and maintaining industrial peace), as set forth by the Supreme Court in Vaca v. Sipes, *supra,* and Textile Workers Union v. Lincoln Mills, *supra,* cannot be achieved, extraordinary relief in the form of exemplary or punitive damages is inappropriate. An obvious example of such an inappropriate situation existed in United Shoe Workers of America, AFL–CIO v. Brooks Shoe Manufacturing Co., 298 F. 2d 277 (3rd Cir. 1962). The suit there was against an employer who had closed his plant in violation of a runaway shop clause in the collective bargaining agreement. With the plant closed and the employer gone, any award of punitive or exemplary damages would not have di-

---

3. *See also*, Richardson v. Communications Workers of America, AFL–CIO, 486 F.2d 801, 806 (8th Cir. 1973) and Richardson v. Communications Workers of America, AFL–CIO, et al., 443 F.2d 974, 979–980 (8th Cir. 1971), wherein the United States Court of Appeals for the Eighth Circuit, citing with approval Sidney Wanzer & Sons Inc. v. Milk Drivers Union Local 753, 249 F.Supp. 664, 671 (N.D.Ill.1966) stated as follows: ". . . As the Supreme Court has written, 'there are problems so vital to the implementation of federal labor policy that they will command a high degree of *inventiveness* from the courts.' International Union, United Auto, etc., Workers of America v. Hoosier Cardinal Corp., *supra* 383 U.S. at 701, 86

S.Ct. at 1111. *See also* Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); Textile Workers Union of America v. Lincoln Mills, *supra*; United Steelworkers of America v. Blaw-Knox Foundry & Mill Mach. Inc., 319 F.Supp. 636, 640 (W.D.Pa. 1970); Sidney Wanzer & Sons, Inc. v. Milk Drivers Union, Local 753, 249 F.Supp. 664, 671 (N.D.Ill.1966.)" (Emphasis added.)

4. *See*, Richardson v. Communications Workers of America, AFL–CIO, 486 F.2d 801, 806 (8th Cir. 1973); Richardson v. Communications Workers of America, AFL–CIO, et al., 443 F.2d 974, 979–980 (8th Cir. 1971).

rectly advanced the goal of industrial peace. By contrast, the award of punitive damages in this case is calculated to deter persistent misconduct and thereby to secure industrial peace presently and in the future.

█ Punitive or exemplary damages, by their very nature, constitute an extraordinary form of relief which will be inappropriate and unwarranted in most labor cases. However, where the award is uniquely effective in changing or deterring particular arbitrary misconduct or a specific pattern of bad faith misconduct which has persisted stubbornly, then an individual remedy must be appropriately fashioned in the form of an award of exemplary or punitive damages.

█ The case at bar presented the facts and circumstances which the jury believed, thereby warranting the granting of extraordinary relief. The evidence presented was sufficient to indicate that the defendants had pursued a course of bad faith misconduct which justified the extraordinary award of punitive damages. Upon being properly instructed, the jury, in their discretion, found the defendants' conduct to be of such an extreme, arbitrary, oppressive, or intentional nature that this unique and extraordinary remedy was warranted in order to promote industrial peace and deter similar misconduct in the future.

Based on the foregoing reasons, the entire record presented and the suggestions in opposition and in support of the motions under consideration herein, it is hereby concluded that defendants' motions for judgment notwithstanding the verdict and for a new trial should be denied. In addition, defendants' motions for stay of proceedings to enforce the judgment pending disposition of defendants' motions for judgment notwithstanding the verdict and for a new trial should be denied as presently being moot. Furthermore, defendants' motions to dissolve the temporary restraining order entered on October 2, 1973, should be denied as also being presently moot in light of the permanent injunction to be entered herein.

For the foregoing reasons, it is therefore

Ordered that defendants' motions for stay of proceedings to enforce judgment be, and they are hereby, denied. It is further

Ordered that defendants' motions to dissolve the temporary restraining order entered on October 2, 1973, be, and they are hereby, denied. It is further

Ordered that defendants' motions for judgment notwithstanding the verdict and for a new trial be, and they are hereby, denied. It is further

Ordered that the defendants and all those acting in capacities representative of or in concert with the defendants be, and they are hereby, permanently restrained and enjoined from interfering with or in any manner disturbing the plaintiff's seniority status as heretofore declared and adjudged by this Court, including the processing or advocating of any and all grievances that are in opposition to the plaintiff's said seniority status as declared and adjudged by this Court, or in any other manner attempting to contravene the lawful orders of this Court.